No. 23-10616

# In the United States Court of Appeals for the Eleventh Circuit

———————

Leroy Pernell, et al.,

*Plaintiffs-Appellees*,

*v.*

Robert Andrade, et al.,

*Movants-Appellants.*

———————

On Appeal from the United States District Court
for the Northern District of Florida

———————

**BRIEF OF THE STATES OF TEXAS, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, KENTUCKY, LOUISIANA, MISSISSIPPI, MONTANA, NEBRASKA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, AND VIRGINIA AS AMICI CURIAE IN SUPPORT OF MOVANTS-APPELLANTS**

———————

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

William F. Cole
Assistant Solicitor General

Sara Baumgardner
Assistant Attorney General

*Attorneys for Amici Curiae*

## Certificate of Interested Persons

No. 23-10616

Leroy Pernell, et al.,

*Plaintiffs-Appellees*,

*v.*

Robert Andrade, et al.,

*Movants-Appellants.*

Amici Curiae certify that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1, and Eleventh Circuit Rules 26.1-1, 28-1(b), and 29-2:

1. Almond, Russell, *Plaintiff-Appellee*

2. Altizer, Tiffany, *Defendant*

3. Alvarez, Cesar L., *Defendant*

4. Alvarez, Maximo, *Defendant*

5. American Civil Liberties Union of Florida, *Counsel for Plaintiffs-Appellees*

6. American Civil Liberties Union, *Counsel for Plaintiffs-Appellees*

7. Andrade, Robert, *Movant-Appellant*

8. Armas, Jose J., *Defendant*

9. Austin, Sharon Wright, *Plaintiff-Appellee*

10. Axelman, David, *Counsel for Movants-Appellants*

11. Azis, Jacqueline Nicole, *Counsel for Plaintiffs-Appellees*

12. Ballard, Kathryn, *Defendant*

13. Ballard Spahr LLP, *Counsel for Plaintiffs-Appellees*

14. Baumgardner, Sara, *Counsel for Amicus Curiae the State of Texas*

15. Bell, Daniel, *Counsel for Movants-Appellants*

16. Bell, Melony, *Movant-Appellant*

17. Bell, Zachary Chandler, *Defendant*

18. Bird, Brenna, *Counsel for Amicus Curiae the State of Iowa*

19. Blankenship, Katherine, *Counsel for Plaintiffs-Appellees*

20. Boaz, Timothy, *Defendant*

21. Borrero, David, *Movant-Appellant*

22. Brandon, David L., *Defendant*

23. Butchey, Deanne, *Defendant*

24. Callahan, Sandra, *Defendant*

25. Cameron, Daniel, *Counsel for Amicus Curiae the State of Kentucky*

26. Carr, Christopher M., *Counsel for Amicus Curiae the State of Georgia*

27. Carrere, Michael, *Defendant*

28. Cavazos, Ann Marie, *Defendant*

29. Cerio, Timothy, *Defendant*

30. Chicken, Eric, *Defendant*

31. Christy, Bill, *Defendant*

32. Cliatt, II, Otis, *Defendant*

33. Cole, Richard P., *Defendant*

34. Cole, William F., *Counsel for Amicus Curiae the State of Texas*

35. Coleman, Santino, *Counsel for Plaintiffs-Appellees*

36. Collins, Peter, *Defendant*

37. Colson, Dean S., *Defendant*

38. Condello, Jeff, *Defendant*

39. Conte, Joseph, *Defendant*

40. Cooper & Kirk, PLLC, *Counsel for Defendants*

41. Cooper, Charles J., *Counsel for Defendants*

42. Corcoran, Richard, *Defendant*

43. Corr, Christopher T., *Defendant*

44. Dauphin, Johana, *Plaintiff-Appellee*

45. De Las Cuevas-Diaz, Vivian, *Defendant*

46. Diaz, Jr., Manny, *Defendant*

47. Donnelly, N. Rogan, *Defendant*

48. Dorsey, Dana Thompson, *Plaintiff-Appellee*

49. Dortch, Jr., Thomas W., *Defendant*

50. Drummond, Gentner, *Counsel for Amicus Curiae the State of Oklahoma*

51. Duart, Carlos A., *Defendant*

52. Dubose, Michael, *Defendant*

53. Dunn, Marvin, *Plaintiff-Appellee*

54. Edge, Aubrey, *Defendant*

55. Edinger, Gary, *Counsel for Plaintiffs-Appellees in* Novoa v. Diaz, *No. 22-13994*

56. Edwards, Jerry Crawford, *Counsel for Plaintiffs-Appellees*

57. Ezray, Evan, *Counsel for Movants-Appellants*

58. Fajana, Morenike, *Counsel for Plaintiffs-Appellees*

59. Fernandez-Barquin, Juan, *Movant-Appellant*

60. Fine, Randy, *Movant-Appellant*

61. Fitch, Lynn, *Counsel for Amicus Curiae the State of Mississippi*

62. First Amendment Forum at University of South Florida, *Plaintiff-Appellee in* Novoa v. Diaz, *No. 22-13994*

63. Fitzpatrick, Magistrate Judge Martin A., *U.S. District Court N.D. Fla.*

64. Florida A&M University Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

65. Florida International University Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

66. Florida International University Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

67. Florida Office of the Attorney General, *Attorneys for Defendants/Appellants*

68. Florida State Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

69. Foundation for Individual Rights and Expression, *Counsel for Plaintiffs-Appellees in* Novoa v. Diaz, *No. 22-13994*

70. Frost, Patricia, *Defendant*

71. Gabadge, Nimna, *Defendant*

72. Gaekwad, Danny, *Defendant*

73. Gary S. Edinger & Associates PA – Gainesville, Florida, *Counsel for Plaintiffs-Appellees in* Novoa v. Diaz, *No. 22-13994*

74. Gonzalez, Jorge, *Defendant*

75. Griffin, Tim, *Counsel for Amicus Curiae the State of Arkansas*

76. Gruebel, Greg, *Counsel for Plaintiffs-Appellees* in Novoa v. Diaz, *No. 22-13994*

77. Griffin, Michael, *Defendant*

78. Haddock, Edward, *Defendant*

79. Harper, Kristin, *Defendant*

80. Heavener, James W., *Defendant*

81. Henderson, Jim W., *Defendant*

82. Hilgers, Michael T., *Counsel for Amicus Curiae the State of Nebraska*

83. Hinger, Sarah Ann, *Counsel for Plaintiffs-Appellees*

84. Hosseini, Morteza, *Defendant*

85. Horton, Oscar, *Defendant*

86. Jackley, Marty J., *Counsel for Amicus Curiae the State of South Dakota*

87. Johnson, Alexsis Marie, *Counsel for Plaintiffs-Appellees*

88. Jones, Ken, *Defendant*

89. Jordan, Darlene Luccio, *Defendant*

90. King, Stephen, *Defendant*

91. Knudsen, Austin, *Counsel for Amicus Curiae the State of Montana*

92. Kuntz, Thomas G., *Defendant*

93. Labrador, Raúl, *Counsel for Amicus Curiae the State of Idaho*

94. Lamb, Brian, *Defendant*

95. Landry, Jeff, *Counsel for Amicus Curiae the State of Louisiana*

96. Lawson, Kevin, *Defendant*

97. Leckerman, Jason Allen, *Counsel for Plaintiffs-Appellees*

98. Lee, Jin Hee, *Counsel for Plaintiffs-Appellees*

99. Leftheris, Julie, *Defendant*

100. Lemasters, Lauren D., *Defendant*

101. Levine, Alan, *Defendant*

102. Lopez, Daniella, *Defendant*

103. Lowell, Natasha, *Defendant*

104. Lubin, Catharine, *Counsel for Plaintiffs-Appellees*

105. Lugo, Christhofer, *Defendant*

106. Lydecker, Charles, *Defendant*

107. Mabatah, Isiuwa Jacqueline, *Counsel for Plaintiffs-Appellees*

108. Maggard, Randall Scott, *Movant-Appellant*

109. Maida, Michael, *Counsel for Movants-Appellants*

110. Marshall, Steve, *Counsel for Amicus Curiae the State of Alabama*

111. Martins, Alex, *Defendant*

112. Masullo, Ralph, *Movant-Appellant*

113. Mateer, Craig, *Defendant*

114. McAlpin, Caryl, *Defendant*

115. McClain, Stan, *Movant-Appellant*

116. McLaurin, Charles, *Counsel for Plaintiffs-Appellees*

117. McNamara, Caroline A., *Counsel for Plaintiffs-Appellees*

118. Michael, Deanna, *Defendant*

119. Miklos, John, *Defendant*

120. Mills, Harold, *Defendant*

121. Miyares, Jason S., *Counsel for Amicus Curiae the State of Virginia*

122. Monbarren, Lauran, *Defendant*

123. Moody, Ashley B., *Counsel for Movants-Appellants*

124. Moore, Kimberly, *Defendant*

125. Moraff, Laura Beth, *Counsel for Plaintiffs-Appellees*

126. Morris, Joshua, *Counsel for Plaintiffs-Appellees in* Novoa v. Diaz, *No. 22-13994*

127. NAACP Legal Defense & Educational Fund, *Counsel for Plaintiffs-Appellees*

128. Nascimento, Isabella Salomao, *Counsel for Plaintiffs-Appellees*

129. Novoa, Adriana, *Plaintiff-Appellee in* Novoa v. Diaz, *No. 22-13994*

130. Oberdorf, Tobin Rogers, *Movant-Appellant*

131. Occhipinti, Anna, *Counsel for Plaintiffs-Appellees*

132. Ohlendorf, John David, *Counsel for Defendants*

133. Okaty, Michael, *Defendant*

134. O'Keefe, Daniel T., *Defendant*

135. Palyam, Nithin, *Defendant*

136. Park, Shelley, *Plaintiff-Appellee*

137. Patel, Rahul, *Defendant*

138. Patel, Shilen, *Defendant*

139. Paxton, Warren Kenneth, *Counsel for Amicus Curiae the State of Texas*

140. Payne, Bobby, *Movant-Appellant*

141. Pernell, LeRoy, *Plaintiff-Appellee*

142. Perry, Belvin, Jr., *Defendant*

143. Pettit, Lanora C., *Counsel for Amicus Curiae the State of Texas*

144. Phalin, Amanda J., *Defendant*

145. Piccolo, Frederick, *Defendant*

146. Powers, Marsha D., *Defendant*

147. Prescott, T. Gene, *Defendant*

148. Ramer, John, *Counsel for Defendants*

149. Rechek, Samuel, *Plaintiff-Appellee in* Novoa v. Diaz, *No. 22-13994*

150. Reed, Craig, *Defendant*

151. Reyes, Sean D., *Counsel for Amicus Curiae the State of Utah*

152. Ridley, Fred S., *Defendant*

153. Rokita, Theodore E., *Counsel for Amicus Curiae the State of Indiana*

154. Roth, Justin, *Defendant*

155. Roth, Rick, *Movant-Appellant*

156. Rowe, Chanel T., *Defendant*

157. Sandoval, Jennifer, *Plaintiff-Appellee*

158. Sargeant, Deborah, *Defendant*

159. Sarnoff, Marc D., *Defendant*

160. Sasser, Bob, *Defendant*

161. Schneider, Jennifer, *Defendant*

162. Scott, Steven, *Defendant*

163. Seay, Beverly J., *Defendant*

164.  Seixas, Melissa, *Defendant*

165.  Self, William, *Defendant (Dismissed on November 17, 2022)*

166.  Shoaf, Jason, *Movant-Appellant*

167.  Silagy, Eric, *Defendant*

168.  Sirois, Tyler, *Movant-Appellant*

169.  Steinbaugh, Adam, *Counsel for Plaintiffs-Appellees in* Novoa v. Diaz, *No. 22-13994*

170.  Stermon, Kent, *Defendant*

171.  Stone, II, Judd E., *Counsel for Amicus Curiae the State of Texas*

172.  Stone, Kenward, *Defendant*

173.  Sykes, Emerson James, *Counsel for Plaintiffs-Appellees*

174.  Thiel, John, *Defendant*

175.  Tilley, Daniel Boaz, *Counsel for Plaintiffs-Appellees*

176.  Tobin, Charles David, *Counsel for Plaintiffs-Appellees*

177.  Tovar, Rogelio, *Defendant*

178.  Truenow, Keith, *Movant-Appellant*

179.  Trujillo, Carlos, *Defendant*

180.  University of Central Florida Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

181.  University of Florida Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

182.  University of South Florida Board of Trustees, *Defendant (Dismissed on November 22, 2022)*

183.  Walker, Judge Mark E., *U.S. District Court N.D. Fla.*

184.  Washington, Nicole, *Defendant*

185.  Watson, Leah Monique, *Counsel for Plaintiffs-Appellees*

186.  Weatherford, Drew, *Defendant*

187.  Weatherford, William, *Defendant*

188.  Wilson, Alan, *Counsel for Amicus Curiae the State of South Carolina*

189.  Whitaker, Henry, *Counsel for Movants-Appellants*

190.  Wold, Megan M., *Counsel for Defendants*

191.  Zucker, Anita G., *Defendant*

Apart from undisclosed members of Appellees, no publicly traded company or corporate has an interest in the outcome of this case or appeal.

/s/ Lanora C. Pettit
LANORA C. PETTIT
*Counsel of Record for*
*Amici Curiae*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons .................................................................. i

Table of Authorities ............................................................................... xii

Interest of Amici Curiae ........................................................................... 1

Introduction ....................................................................................... 1

Argument .......................................................................................... 4

    I.   The Legislative Privilege Bars Inquiries into Legislative Motives. ............. 4

    II.  The District Court Erred by Ordering the Production of Documents
        Subject to the Legislative Privilege. ........................................... 9

        A.  Documents that the district court viewed as "factually based"
            are covered by legislative privilege. ..................................... 9

        B.  This is not the type of case where Congress has stated a federal
            policy that overcomes state common-law legislative privilege. .......... 14

Conclusion ....................................................................................... 22

Certificate of Compliance ....................................................................... 24

Certificate of Service ............................................................................ 24

# Table of Authorities

Page(s)

**Cases:**

*Alabama Educ. Ass'n v. Bentley,*
   No. CV-11-S-761-NE, 2013 WL 124306 (N.D. Ala. Jan. 3, 2013) ....................... 6

*Am. Trucking Ass'ns v. Alviti,*
   14 F.4th 76 (1st Cir. 2021) ............................................3, 5, 7, 8, 14, 15, 16, 17, 18

*Bethune-Hill v. Va. State Bd. of Elecs.,*
   114 F. Supp. 3d 323 (E.D. Va. 2015) ...........................................................15, 20

*Brnovich v. Democratic Nat'l Comm.,*
   141 S. Ct. 2321 (2021) ...................................................................................17

*Cox v. Adm'r U.S. Steel & Carnegie,*
   17 F.3d 1386 (11th Cir. 1994) ........................................................................ 10

*Drummond Co., Inc. v. Conrad & Scherer, LLP,*
   885 F.3d 1324 (11th Cir. 2018) ......................................................................11

*Eastland v. U.S. Servicemen's Fund,*
   421 U.S. 491 (1975) ............................................................................ 2, 11, 20

*EEOC v. Wash. Suburban Sanitary Comm'n,*
   631 F.3d 174 (4th Cir. 2011) .......................................................................... 1

*Elston v. Talladega Cnty. Bd. of Educ.,*
   997 F.2d 1394 (11th Cir. 1993) ................................................................. 17, 19

*In re Franklin Nat'l Bank Sec. Litig.,*
   478 F. Supp. 577 (E.D.N.Y 1979) ................................................................... 6

*Fulton Cnty. Special Purpose Grand Jury v. Graham,*
   No. 22-12696, 2022 WL 13682659 (11th Cir. 2022)...................................... 8, 9

*In re Grand Jury,*
   821 F.2d 946 (3d Cir. 1987) ................................................................3, 6, 14, 15

*In re Grand Jury Matter No. 91-01386,*
   969 F.2d 995 (11th Cir. 1992) ........................................................................ 10

*Gravel v. United States,*
   408 U.S. 606 (1972) ................................................................................. 4, 10

*Greater Birmingham Ministries v. Sec'y of State for Ala.,*
   992 F.3d 1299 (11th Cir. 2021) .............................................................17, 18, 19

*Hall v. Holder,*
   117 F.3d 1222 (11th Cir. 1997) .......................................................................19

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ............................................................................... 11
*In re Hubbard*,
  803 F.3d 1298 (11th Cir. 2015) ................1, 2, 3, 4, 5, 6, 7, 9, 12, 13, 14, 15, 16, 20
*In re Itron, Inc.*,
  883 F.3d 553 (5th Cir. 2018) ................................................................. 21
*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*,
  849 F.3d 615 (5th Cir. 2017) ............................................................... 5, 6
*La Union del Pueblo Entero v. Bettencourt*,
  No. 23-50201 (5th Cir. *appeal docketed* Mar. 22, 2023) ........................ 1
*Lee v. City of Los Angeles*,
  908 F.3d 1175 (9th Cir. 2018) ....................................3, 7, 8, 15, 16, 17, 18, 19, 20
*LULAC Tex. v. Hughes*,
  No. 22-50435 (5th Cir. argued Aug. 2, 2022) ...................................... 1
*LULAC Tex. v. Patrick*,
  No. 22-50662 (5th Cir. *appeal docketed* July 26, 2022) ....................... 1
*Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*,
  376 F.3d 1270 (11th Cir. 2004) ............................................................ 6
*Perez v. Perry*,
  No. SA-11-CV-360-OLG-JES, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ........ 6
*Rodriguez v. Pataki*,
  280 F. Supp. 2d 89 (S.D.N.Y. 2003)................................... 2, 6, 14, 15
*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ............................................................. 11
*In re Slaughter*,
  694 F.2d 1258 (11th Cir. 1982) ......................................................... 10
*Tenney v. Brandhove*,
  341 U.S. 367 (1951)................................................................... 4, 5, 8, 20
*United States v. Brewster*,
  408 U.S. 501 (1972)...............................................................................1, 4
*United States v. Gillock*,
  445 U.S. 360 (1980) ....................................................3, 5, 7, 8, 14, 15, 16
*United States v. Helstoski*,
  442 U.S. 477 (1979) .............................................................................. 4
*United States v. Johnson*,
  383 U.S. 169 (1966) .............................................................................. 4

*United States v. Johnson,*
    702 F. App'x 815 (11th Cir. 2017) ...................................... 10
*United States v. O'Brien,*
    391 U.S. 367 (1968) ........................................................17
*United States v. Suarez,*
    820 F.2d 1158 (11th Cir. 1987) ...................................... 10
*United States v. Tenorio-Angel,*
    756 F.2d 1505 (11th Cir. 1985)....................................... 10
*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ................................................. 20, 21
*Veasey v. Abbott,*
    830 F.3d 216 (5th Cir. 2016) (en banc)............................19
*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977).................................... 3, 7, 16, 18, 19
*Williams v. City of Dothan,*
    745 F.2d 1406 (11th Cir. 1984) .....................................19

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:
    art. I, § 6................................................................5, 15
    amend. I ...............................................................6, 12
    amend. XIV ....................................................12, 16, 19
42 U.S.C. § 1983 ...........................................3, 7, 15, 16
Fed. R. Civ. P. 26(b)(1) ...............................................13, 20
Fed. R. Evid. R. 501 ...................................................... 5

**Other Authorities:**

*CS/HB 7 (2022) - Individual Freedom,* Fla. House of Representatives,
    https://tinyurl.com/5ypfhkdy (last visited Apr. 24, 2023) ................13
*CS/HB 7: Individual Freedom,* The Fla. Senate,
    https://tinyurl.com/5x29t2zy (last visited Apr. 24, 2023) ................13
Mem. Op. of Douglas W. Kmiec, Applicability of Executive Privilege
    to the Recommendations of Independent Agencies Regarding
    Presidential Approval or Veto of Legislation, 10 Op. O.L.C. 176
    (Dec. 22, 1986), https://tinyurl.com/3vc8wh33................................11

Op. of Paul D. Clement, Assertion of Executive Privilege Concerning
    the Dismissal and Replacement of U.S. Attorneys, 31 Op. O.L.C. 1
    (June 27, 2007), https://tinyurl.com/yc2rx3ds ................................................11
Richard B. Latner, *The Kitchen Cabinet & Andrew Jackson's Advisory
    System*, 65 J. of Am. Hist. 367 (1978)..................................................................11

## Interest of Amici Curiae

Amici States have a strong interest in the proper interpretation and application of the legislative privilege, which for the last five centuries has stood to protect the process by which the people's representatives decide what laws will govern. Plaintiffs that challenge the constitutionality of state laws routinely request access to documents or testimony that the privilege protects, requiring members of the States' legislatures to appear in litigation to which they are not parties just to protect their deliberations from disclosure in private, civil discovery. For example, the Fifth Circuit is currently considering three appeals raising such issues—just involving the State of Texas. *See La Union del Pueblo Entero v. Bettencourt*, No. 23-50201 (5th Cir. *appeal docketed* Mar. 22, 2023); *LULAC Tex. v. Patrick*, No. 22-50662 (5th Cir. *appeal docketed* July 26, 2022); *LULAC Tex. v. Hughes*, No. 22-50435 (5th Cir. argued Aug. 2, 2022). Anything this Court says is likely to influence how these and other similar cases are resolved.

## Introduction

As this Court has explained, the legislative privilege "protects the legislative process itself," including "legislators' actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). It guards against "inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). That protection allows lawmakers to "focus on their public duties," *Hubbard*, 803 F.3d at 1310 (quoting *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d

174, 181 (4th Cir. 2011)), by ensuring that civil litigation does not "create[] a distraction and force[] Members to divert their time, energy, and attention from their legislative tasks" to respond to discovery requests, *id.* (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)).

This case is part of a larger trend in which district courts across the country have fundamentally undermined this key protection for the democratic process by applying a multi-part balancing test originally derived from a single, poorly reasoned district-court opinion, *Rodriguez v. Pataki*, 280 F. Supp. 2d 89 (S.D.N.Y. 2003), which itself extrapolated the test from a statutory privilege that lacks the same deep common-law roots, *id.* at 100-01. Plaintiffs here served third-party subpoenas on fourteen members of the Florida House of Representatives *specifically* to inquire into their subjective motivations for supporting Florida's Individual Freedom Act—commonly referred to as H.B. 7—which Plaintiffs maintain violates the Fourteenth Amendment's Equal Protection Clause because it was enacted with discriminatory intent. ECF 100 at 1-2. The district court permitted this intrusive discovery for two reasons. *First*, the court concluded that "factually based" documents such as "bill drafts, bill analyses, white papers, studies, and news reports," do not reveal the motivations of individual legislators, and thus are not protected by the privilege. *Id.* at 4-7. *Second*, following out-of-circuit authority, the district court concluded that because the legislative privilege is "qualified," *id.* at 7, it must yield to the Plaintiffs' putative need for the information, *id.* at 9-14.

The district court's approach here cannot be squared with how this and other circuit courts have treated the 500-year-old legislative privilege. Indeed, in an

analogous case, this Court refused to allow plaintiffs to breach the privilege where the plaintiffs served third-party subpoenas to gather evidence about legislative motives to support an intent-based constitutional claim. *See Hubbard*, 803 F.3d at 1307-15. Two of this Court's sister circuits have since applied the privilege in private, civil litigation to shield state legislators from third-party discovery probing the motivations for legislative action. *See Am. Trucking Ass'ns v. Alviti*, 14 F.4th 76, 88 (1st Cir. 2021); *Lee v. City of Los Angeles*, 908 F.3d 1175, 1186-88 (9th Cir. 2018).

Although the approach adopted below is fairly common among district courts, when these issues have percolated to the appellate level, neither this Court nor its sister circuits have distinguished between supposedly factual and supposedly non-factual materials in cases like this one, where the only purpose behind the proposed discovery is to probe legislative intent. *See Hubbard*, 803 F.3d at 1310-11. Moreover, though the Supreme Court has recognized that state legislators' privilege may be overcome by a sufficient federal interest, *United States v. Gillock*, 445 U.S. 360, 373 (1980), and is in some sense "qualified," the courts of appeals have recognized that *Gillock* "was not based on a general balancing of competing interests," which "may differ from case to case." *In re Grand Jury*, 821 F.2d 946, 948 (3d Cir. 1987). Instead, *Gillock* adopted a categorical approach based on whether *Congress* has decided that a particular federal interest overcomes state common-law privileges. *Gillock*, 445 U.S. at 373 ("draw[ing] the line" at civil cases), which Congress has not done for cases sounding in equal protection brought under section 1983. *See Lee*, 908 F.3d at 1187 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)).

## ARGUMENT

## I.    The Legislative Privilege Bars Inquiries into Legislative Motives.

The legislative privilege generally shields from inquiry acts of legislators and their agents undertaken when "acting in the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). It both "protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts'" and "precludes any showing of how [a legislator] acted, voted, or decided." *United States v. Helstoski*, 442 U.S. 477, 489 (1979) (quoting *Brewster*, 408 U.S. at 527). The legislative process includes not only "words spoken in debate," but also "[c]ommittee reports, resolutions, and the act of voting" and "things generally done" during a legislature's session "by one of its members in relation to the business before it." *Gravel v. United States*, 408 U.S. 606, 617 (1972). In essence, "[t]he privilege protects the legislative process itself, and therefore covers . . . legislators' actions in the proposal, formulation, and passage of legislation." *Hubbard*, 803 F.3d at 1308.

The common-law roots of the legislative privilege run deep, stretching back to the English "Parliamentary struggles of the Sixteenth and Seventeenth Centuries," *Tenney*, 341 U.S. at 372, in particular the "conflict between the [House of] Commons and the Tudor and Stuart monarchs," *United States v. Johnson*, 383 U.S. 169, 178 (1966). But "[s]ince the Glorious Revolution in Britain, and throughout United States history, the privilege has been recognized as an important protection of the independence and integrity of the legislature." *Id*. At the Founding, "[f]reedom of speech and action in the legislature was taken as a matter of course," and the

4

Framers deemed it "so essential . . . that it was written into the Articles of Confederation and later into the Constitution." *Tenney*, 341 U.S. at 372.

In the federal Constitution, the legislative privilege is reflected in the Speech or Debate Clause, which provides in relevant part that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6. That federal provision was preceded by similarly robust protections in some of the earliest state constitutions. *See Tenney*, 341 U.S. at 375-77.

Although the "Federal Speech or Debate Clause . . . by its terms is confined to federal legislators," *Gillock*, 445 U.S at 374, the legislative privilege also shields state legislators in federal court via "federal common law, as applied through Rule 501 of the Federal Rules of Evidence," *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017); *accord Hubbard*, 803 F.3d at 1307. "[P]rinciples of comity" undergird application of the legislative privilege to state legislators who are haled before federal courts. *Alviti*, 14 F.4th at 87 (quoting *Gillock*, 445 U.S. at 373). So do "the interests in legislative independence," which "remain relevant in the common-law context." *Id.*

This Court has already held that the common-law legislative privilege protects state or local legislators from third-party discovery seeking to probe legislators' motivations for legislative acts in private, civil litigation—even where that litigation raises issues of constitutional significance. *Hubbard*, 803 F.3d at 1311-12. In *Hubbard*, the Court held that a district court abused its discretion when it refused to quash third-party subpoenas duces tecum served on legislators and executive-branch

officials in a First Amendment retaliation case. *Id.* at 1308. The Court rejected the district court's reliance on a multi-factor balancing test, *id.*, which was originally developed by a district court in New York. *Pataki*, 280 F. Supp. 2d at 100-02. Citing *In re Grand Jury*, the court in *Pataki* concluded that the legislative privilege is "qualified" and equated it to the most closely related qualified privilege: the deliberative-process privilege afforded to federal agencies. *Id.* at 100-01 (citing *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y 1979)). In doing so, the *Pataki* court never grappled with the fact that the deliberative-process privilege is largely a statutory privilege incorporated into the Freedom of Information Act—not a longstanding common-law privilege with its own purposes and limitations. *See Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1276-78 (11th Cir. 2004) (discussing the contours of Exemption 5 in FOIA). District courts that have followed *Pataki* have similarly failed to analyze whether rules that apply to one should be extended without alteration to the other.[1]

In *Hubbard*, this Court looked instead to the common-law origins of the legislative privilege and concluded that "[t]he privilege applies with full force against requests for information about the motives for legislative votes and legislative enactments," 803 F.3d at 1310. Because "[t]he subpoenas' only purpose was to support

---

[1] *See also, e.g.*, *Alabama Educ. Ass'n v. Bentley*, No. CV-11-S-761-NE, 2013 WL 124306, at *13 (N.D. Ala. Jan. 3, 2013) (quoting *Pataki*, 280 F. Supp. 2d at 99-100), *rev'd and remanded sub nom. In re Hubbard*, 803 F.3d 1298; *Jefferson Cmty. Health Care*, 849 F.3d at 624 (quoting *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) (citing *Pataki*, 280 F. Supp. 2d at 93–94)).

the lawsuit's inquiry into the motivation[s]" of legislators, this Court concluded that it "str[uck] at the heart of the legislative privilege." *Id.*

The Court recognized that "a state lawmaker's legislative privilege must yield in some circumstances where necessary to vindicate important federal interests such as 'the enforcement of federal criminal statutes.'" *Id.* at 1311 (quoting *Gillock*, 445 U.S. at 373). But it had no cause to fully explore what those circumstances might be. It was enough to conclude that the privilege was *not* overcome in the case before it— that is, in private, civil litigation brought under section 1983 challenging an "otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it." *Id.* at 1312.

Two of this Court's sister circuits have since reached similar results. *See Alviti*, 14 F.4th at 88-90; *Lee*, 908 F.3d at 1186-88. Particularly relevant here is *Lee*, which also involved claims of unconstitutional discrimination. There, the Ninth Circuit affirmed a district-court order that prohibited plaintiffs from deposing several city councilmembers and the Mayor of Los Angeles in a racial-gerrymandering case, concluding that legislative privilege barred the depositions. 908 F.3d at 1181, 1186-88. As that court observed, the Supreme Court "has repeatedly stressed" that inquiry into legislative motivations is "usually" not permitted. *Id.* at 1187 (quoting *Arlington Heights*, 429 U.S. at 268 n.18). The Ninth Circuit noted that this principle applied to the case before it, notwithstanding the fact that plaintiffs made "serious allegations" of racial gerrymandering during the redistricting process—a process that goes to the very foundations of our democratic system. *Id.* at 1188. And the Ninth Circuit emphatically rejected the plaintiffs' "call for a categorical exception whenever a

7

constitutional claim directly implicates the government's intent" because such an exception "would render the privilege 'of little value.'" *Id.* (quoting *Tenney*, 341 U.S. at 377).

Most recently, in *Alviti*, the First Circuit applied the common-law legislative privilege to reverse the denial of motions to quash subpoenas that "sought evidence of [Rhode Island] State Officials' legislative acts and underlying motives." 14 F.4th at 87. That court observed that "federal courts will often sustain assertions of legislative privilege by state legislatures except when 'important federal interests are at stake,' such as in a federal criminal prosecution." *Id.* (quoting *Gillock*, 445 U.S. at 373). The First Circuit held that discovery into "the State Officials' subjective motives" did not "outweigh[] the comity considerations implicated by the subpoenas," reasoning that "mere assertion of a federal claim" was not sufficient to overcome the privilege. *Id.* at 88. If it were, "the privilege would be pretty much unavailable largely whenever it is needed." *Id.* The court also held that "proof of the subjective intent of state lawmakers is unlikely to be significant enough in this case to warrant setting aside the privilege" where the claim did not turn on such evidence. *Id.* at 88-89. And it noted that the Supreme Court "has warned against relying too heavily on . . . evidence" of subjective intent, which "is often less reliable and therefore less probative than other forms of evidence bearing on legislative purpose." *Id.* at 90.[2]

---

[2] Since *Alviti*, this Court has allowed a grand jury to subpoena a sitting U.S. Senator over a privilege objection. *See Fulton Cnty. Special Purpose Grand Jury v. Graham*, No. 22-12696, 2022 WL 13682659 (11th Cir. 2022). But it did so only after carefully distinguishing the Senator's legislative acts from his non-legislative acts and concluding that it was "unlikely that questions" would arise about the Senator's

## II. The District Court Erred by Ordering the Production of Documents Subject to the Legislative Privilege.

The district court offered two alternative bases for partly dispensing with the Legislators' legislative privilege in this case. *First*, the court distinguished between documents that it viewed as "factually based" and those that contained "motivations or mental impressions," concluding that the legislative privilege applied to the latter class of documents but not the former. ECF 100 at 6. *Second*, the district court applied a five-factor balancing test to hold that this case is one of the rare civil cases where the privilege should yield to Plaintiffs' asserted desire for discovery. *Id.* at 9-14. Neither argument can be squared with *Hubbard* or the U.S. Supreme Court case on which *Hubbard* relied.

### A. Documents that the district court viewed as "factually based" are covered by legislative privilege.

The district court first allowed discovery into what it deemed "purely factual documents" or "factually based information," including "bill drafts, bill analyses, white papers, studies, and news reports." ECF 100 at 6. In its view, "communications or documents setting out the Legislators' or their staff members' motivations and mental impressions regarding HB 7 fall squarely within the legislative privilege," but factual documents do not. *Id.* That was clearly error to the extent that these "bill drafts, bill analyses, white papers, studies, and news reports" into which the district

---

subjective motivations in performing the former. *Id.* at *2. Because it is undisputed that the discovery at issue in this appeal relates to legislative acts, *see* ECF 100 at 2 (explaining that Plaintiffs seek "evidence of discriminatory intent" in the enactment of H.B. 7), *Graham* is not relevant here.

court allowed inquiry overlap with "[c]ommittee reports, resolutions, and the act of voting," as well as the "things generally done" during a legislature's session, which the Supreme Court has already held are covered by legislative privileges. *Gravel*, 408 U.S. at 617. Moreover, the district court appears to be mixing up its privileges by applying law developed in the attorney-client privilege context to legislative privilege.

1.    The district court's distinction between factual materials and communications or opinion-related documents improperly extrapolates concepts from attorney-client or work-product contexts to legislative privilege. Unlike exemptions to statutes like FOIA, the scope of any common-law "privilege [i]s governed by its underlying purpose." *United States v. Johnson*, 702 F. App'x 815, 816 (11th Cir. 2017) (per curiam) (citing *United States v. Tenorio-Angel*, 756 F.2d 1505, 1510 (11th Cir. 1985)). The attorney-client privilege, for example, excludes factual materials because it is designed to encourage attorney-client communications—not to allow clients to hide factual material by providing it to their lawyer. *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982); *see also In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992) ("[T]he privilege is not all-inclusive and is, as a matter of law, construed narrowly so as not to exceed the means necessary to support the policy which it promotes."); *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) (explaining that attorney-client privilege "serves to obscure the truth" and thus "should be construed as narrowly as is consistent with its purpose"). Conversely, a document reflecting a lawyer's opinion may be covered by the work-product doctrine because the doctrine was designed to protect lawyers' intellectual property. *See Cox v. Adm'r*

10

*U.S. Steel & Carnegie*, 17 F.3d 1386, 1421-22 (11th Cir. 1994) (citing, among other things, *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)); *see also Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334-35 (11th Cir. 2018). Neither concern applies in the legislative-privilege context, because that privilege serves to both "insur[e] the independence of individual legislators" and "reinforc[e] the separation of powers." *Eastland*, 421 U.S. at 502.

This Court should not extend the fact–non-fact distinction to the legislative privilege context. After all, the political branches set the rules by which citizens must conduct their most personal activities. They need facts, which may only be available from other branches of government—or outside the government entirely. Excluding factual material from the scope of the legislative privilege—or the corollary executive privilege,[3] for that matter—fails to "provide sufficient elbow room for advisors to obtain information from all knowledgeable sources." *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997) (per curiam). That is why, to date, courts of appeals have held that the legislative privilege turns on whether the "factual heart" or core of the plaintiffs' claim implicates legislators' "subjective motive[]"—not a

---

[3] *See, e.g.*, Op. of Paul D. Clement, Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys, 31 Op. O.L.C. 1, 5 (June 27, 2007), https://tinyurl.com/yc2rx3ds; *see also In re Sealed Case*, 121 F.3d at 751-52; Mem. Op. of Douglas W. Kmiec, Applicability of Executive Privilege to the Recommendations of Independent Agencies Regarding Presidential Approval or Veto of Legislation, 10 Op. O.L.C. 176, 178 (Dec. 22, 1986), https://tinyurl.com/3vc8wh33; Richard B. Latner, *The Kitchen Cabinet & Andrew Jackson's Advisory System*, 65 J. of Am. Hist. 367, 367 (1978).

"document-by-document" analysis of what does or does not set out a particular legislator's opinions or motivation. *Hubbard*, 803 F.3d at 1310, 1311.

In *Hubbard*, for example, the plaintiffs brought a First Amendment retaliation claim, the "core" or "factual heart" of which implicated the defendant's "subjective motivation." *Id.* at 1310. The district court allowed plaintiffs to obtain many of the same kinds of documents sought by the Plaintiffs here. *Compare id.* at 1303 n.4, *with* ECF 100 at 6. Reversing that decision, this Court held that the *Hubbard* plaintiffs were entitled to none of those documents. *Hubbard*, 803 F.3d at 1310-11. It reasoned that "the factual heart of the retaliation claim and the scope of the legislative privilege were one and the same: the subjective motivations of those acting in a legislative capacity." *Id.* at 1311. As a result, the subpoenas' "only purpose" was seeking "information about the motives for legislative votes and enactments"—that is, "prob[ing] the subjective motivations of the legislators who supported" certain legislation. *Id.* at 1310. Because the core of the *Hubbard* plaintiffs' claim and the legislative privilege's "scope" completely overlapped, those plaintiffs were barred from obtaining any of the documents they sought. *Id.* at 1311.

**2.**   So too here. As in *Hubbard*, the "core" of Plaintiffs' Fourteenth Amendment discriminatory-intent claim completely overlaps with the scope of the legislative privilege: both center on the "subjective motivations of those acting in a legislative capacity." *Id.* As in *Hubbard*, the "only purpose" of Plaintiffs' third-party subpoenas is to seek "information about the motives for legislative votes and enactments" and "probe the subjective motivations of the legislators who supported" certain legislation, so Plaintiffs are not entitled to *any* of the documents they seek. *Id.*

12

at 1310. And, as in *Hubbard*, the Court should not allow Plaintiffs to inquire into the subjective motivations of Florida's legislators just because the district court concluded that some subset of those documents are "factual" in nature. ECF 100 at 6.

As even the district court acknowledged, the "facts" contained in the documents Plaintiffs seek are publicly available, *id.* at 10-11—underscoring that the only purpose of seeking documents containing those facts from legislators is to probe the legislators' subjective intent. For example, bill analyses of H.B. 7, drafts of that bill, and amendments to it are all available to the public on the respective websites of the Florida House of Representatives and Senate. *See CS/HB 7 (2022) – Individual Freedom*, Fla. House of Representatives, https://tinyurl.com/5ypfhkdy (last visited Apr. 24, 2023) ("*H.B. 7—House*"); *CS/HB 7: Individual Freedom*, The Fla. Senate, https://tinyurl.com/5x29t2zy (last visited Apr. 24, 2023) ("*H.B. 7—Senate*"); *see also* ECF 100 at 10-11. The same is true of notices referring bills to committees, notices of committee meetings, and packets provided to members at those meetings. *See H.B. 7—House*, *supra*; *H.B. 7—Senate*, *supra*. The only additional information that can be obtained through discovery is whether a particular Legislator maintained a copy of one of those documents—a fact that could reflect whether the legislator thought the document important, particularly if it is annotated. Even the district court agreed that a legislator's opinion is shielded by the privilege. ECF 100 at 5-6.

Even if all the Plaintiffs would obtain is a purely unannotated copy of publicly available information, this Court should not exclude such documents from the protection of the legislative privilege when a simple internet search would obviate any need to ask for it. *Cf.* Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to

13

"nonprivileged matter that is relevant," considering, among other things, "the parties' relative access to relevant information"). To "insist on [such] unnecessary detail and procedures," *Hubbard*, 803 F.3d at 1311—as the distinction between "factually based" information and "motivations or mental impressions," ECF 100 at 6, would appear to require—"would undermine a primary purpose of the legislative privilege: shielding lawmakers from the distraction created by inquiries into the regular course of the legislative process," *Hubbard*, 803 F.3d at 1311.

### B. This is not the type of case where Congress has stated a federal policy that overcomes state common-law legislative privilege.

Moreover, though this Court has explained that the legislative privilege "must yield in some circumstances where necessary to vindicate important federal interests such as 'the enforcement of federal criminal statutes,'" *Hubbard*, 803 F.3d at 1311 (quoting *Gillock*, 445 U.S. at 373), cases like this one do not present such circumstances. The district court correctly observed that "merely asserting a constitutional claim is not enough to overcome the privilege." ECF 100 at 9; *see Alviti*, 14 F.4th at 87. But it nevertheless concluded that "the privilege gives way in private civil cases concerning important, federally guaranteed public rights" because the privilege is "qualified." ECF 100 at 7-8. Then, it did precisely what the Third Circuit said it should *not* do: rather than apply a categorical exception to the privilege based on a policy statement by Congress, *Gillock*, 445 U.S. at 367-68, it adopted "a general balancing of competing interests" test, which "may differ from case to case," *In re Grand Jury*, 821 F.2d at 948. Specifically, the court applied the same "five-factor balancing test" that other district courts have derived from *Pataki* "to determine

whether the legislative privilege must yield." ECF 100 at 9-14 (citing, among other things, *Bethune-Hill v. Va. State Bd. of Elecs.*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015) (citing *Pataki*, 280 F. Supp. 2d at 101)).

This was wrong on two counts. *First*, while the legislative privilege is "qualified" insofar as it does not apply in federal criminal prosecutions or investigations, the Supreme Court has "drawn the line at civil actions." *Gillock*, 445 U.S. at 373; *accord Hubbard*, 803 F.3d at 1311-12. Even if there were some limited class of civil cases in which Congress had clearly articulated a similar federal interest that abrogates state common-law immunity, section 1983 claims—even when they involve serious concerns regarding discrimination—do not fall within that class. *Lee*, 908 F.3d at 1188. *Second*, the district court erred when it used a five-factor balancing test to conclude that the legislative privilege should give way here, as this Court has already rejected such an indeterminate approach to adjudicating the scope of the legislative privilege.

1.    The Supreme Court has recognized only one "qualification" of state legislative privilege: it does not apply when federal criminal law extends to state legislative activity and thereby places a particular legislator's intent at issue. *See Gillock*, 445 U.S. at 373-74.[4] The Court has "drawn the line at civil actions." *Id.* at 373. For that reason, this Court and its sister circuits have refused to uncritically extend *Gillock* beyond the federal criminal context. *See Hubbard*, 803 F.3d at 1311-12; *Alviti*, 14 F.4th at 87-88; *Lee*, 908 F.3d at 1186-88*; cf. In re Grand Jury*, 821 F.2d at 957.

---

[4] This qualification does *not* apply to cases involving Congress's privilege under the Speech or Debate Clause, which "have frequently arisen in the context of a federal criminal prosecution of a member of Congress." *Gillock*, 445 U.S. at 369.

True, this Court and its sister circuits have left open the possibility that a civil plaintiff might be able to overcome a state legislator's assertion of legislative privilege. *See Hubbard*, 803 F.3d at 1311; *see also Alviti*, 14 F.4th at 88; *Lee*, 908 F.3d at 1187-88. But they have never explored under what circumstances that might happen because it has never come up—notwithstanding that the plaintiffs in each case sought to vindicate important constitutional and statutory rights. *Gillock* suggests that if a state legislator's privilege is to give way in civil cases at all, it must be based on a clear statement by Congress of federal policy to which "comity yields." 445 U.S. at 373. And at a minimum, the claim would need to "turn[] so heavily on subjective motive or purpose" that breaching the privilege would be the only way to prove the claim. *Alviti*, 14 F.4th at 88. *Hubbard* reflects the fact that section 1983 contains no such clear statement, 803 F.3d at 1301, and *Lee* holds that discrimination under section 1983 presents no such need, *see* 908 F.3d at 1187-88 (refusing to dispense with the legislative privilege in a case involving a Fourteenth Amendment claim involving "serious allegations" of racial discrimination).

Contrary to the district court's suggestion, none of these cases stands for the proposition that the privilege yields whenever a private plaintiff asserts a federal right that is merely "important." ECF 100 at 8. That is, the privilege is *not* dispensed with "whenever a constitutional claim directly implicates the government's intent." *Lee*, 908 F.3d at 1188. Indeed, in *Arlington Heights*, the Supreme Court squarely rejected that notion when it recognized that bringing an intentional-discrimination claim does not alone justify breaching the privilege. 429 U.S at 268 & n.18.

**2.**    Even if the legislative privilege were "qualified" in the sense that a suffi-cient showing of need would "warrant setting [it] aside" in some truly extraordinary circumstance, this is not such a case because "proof of the subjective intent of state lawmakers is unlikely" to be the linchpin of Plaintiffs' claims. *Alviti*, 14 F.4th at 88-89. Plaintiffs served third-party subpoenas on the Legislators to "[p]ursu[e] evi-dence of discriminatory intent" to support their claim that H.B. 7 violates the Four-teenth Amendment's Equal Protection Clause. ECF 100 at 2. To succeed on such a claim, "a plaintiff must demonstrate that a challenged action was motivated by an intent to discriminate." *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993); *accord Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299,1321 (11th Cir. 2021). But Plaintiffs' equal-protection claim does not de-pend on proving, with direct evidence, discriminatory intent of these fourteen Leg-islators for at least two reasons.

*First*, because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it," *United States v. O'Brien*, 391 U.S. 367, 384 (1968), discovery probing the mind of any one legislator is not tantamount to evidence of legislative purpose, *cf. Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021) ("[T]he legislators who vote to adopt a bill are not the agents of the bill's sponsor or proponents."). That is why this Court's sister circuits have refused to dispense with the legislative privilege and instead heeded the Supreme Court's "warn[ing] against relying too heavily on" "evidence of individual lawmakers' motives to establish that the legislature as a whole" acted with an im-proper purpose. *Alviti*, 14 F.4th at 90; *see also Lee*, 908 F.3d at 1185. For example,

*Lee* refused to allow discovery into the subjective motivations behind two councilmembers' reapportionment of the seats for Los Angeles's City Council—notwithstanding the fact that two members *admitted* that they were motivated by race—because they "were only two people in a process that incorporated multiple layers of decisions and alterations from the entire [redistricting] Commission, as well as the City Council." *See Lee*, 908 F.3d at 1184. Their motivations could not be imputed to other decisionmakers. *Id.* Instead, *Lee* and cases like it have looked to circumstantial evidence of legislative purpose such as "statutory text, context, and legislative history," which is more "reliable" and "probative" of the Legislature's purpose, than "evidence of individual legislators' motives." *Alviti*, 14 F.4th at 90; *see Lee*, 908 F.3d at 1187-88.

*Second*, Plaintiffs' equal-protection claim does not require direct evidence of intentional discrimination. In this Circuit, intentional-discrimination claims are analyzed through a modified version of the framework articulated in *Arlington Heights*, in which a court applies eight nonexhaustive factors to determine whether "discriminatory intent exist[s]" in a state law: "(1) the impact of the challenged law; (2) the historical background; (3) the specific sequence of events leading up to its passage; (4) procedural and substantive departures; and (5) the contemporary statements and actions of key legislators," as well as "(6) the foreseeability of disparate impact; (7) knowledge of that impact, and (8) the availability of less discriminatory alternatives." *Greater Birmingham Ministries*, 992 F.3d at 1321-22. But these eight factors look to *circumstantial* evidence of discriminatory purpose of the entire legislature—not direct evidence of the subjective intent of a subset of individual legislators. *See id.*

Indeed, as *Lee* noted in rejecting an effort to breach legislative privilege, 908 F.3d at 1188, *Arlington Heights* itself cautions "that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and are therefore "usually to be avoided." 429 U.S. at 268 n.18. The Supreme Court acknowledged that even in "extraordinary instances" where "[t]he legislative or administrative history may be highly relevant," testimony from legislators "frequently will be barred by privilege." *Id.* at 268.

Consequently, Plaintiffs do not need direct evidence of discriminatory intent to make out their claim here. As this Court has explained, "[d]iscriminatory intent may be found 'even where the record contains no direct evidence of bad faith, ill will or any evil motive on the part of public officials.'" *Elston*, 997 F.2d at 1406 (quoting *Williams v. City of Dothan*, 745 F.2d 1406, 1414 (11th Cir. 1984)).[5] That is why *Lee* held that intrusive discovery into legislators' subjective intent was not appropriate in a case asserting racial discrimination under the Fourteenth Amendment. 908 F.3d at 1186-88.

**3.** The district court was wrong to depart from these principles by invoking a nebulous five-factor test, ECF 100 at 9-14, which is an approach to adjudicating

---

[5] *Accord Hall v. Holder*, 117 F.3d 1222, 1225 (11th Cir. 1997) ("[T]he Supreme Court repeatedly has stressed that intentional discrimination can be inferred from the circumstances surrounding the challenged governmental action." (citing *Arlington Heights*, 429 U.S. at 266)); *Veasey v. Abbott*, 830 F.3d 216, 231 n.13 (5th Cir. 2016) (en banc) (explaining that *Arlington Heights* does not "require[] direct evidence" to prove a Fourteenth Amendment claim of the type Plaintiffs advance here).

claims of legislative privilege that has already been rejected by this Court. Even if the district court *could* have adopted this test, it should not have done so.

As discussed above (at 5-6), this Court's *Hubbard* decision expressly rejected the application of another multi-factor test for purposes of adjudicating legislative-privilege claims. 803 F.3d at 1308. For good reason: "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). By their nature, nebulous balancing tests of the type adopted below inevitably lead to unequal application because they turn on subjective value judgments about the merits of the case and the comparative value of different interests at stake. Such inequity is always to be avoided, but never more so than when the stakes involve "the integrity of the legislative process." *Eastland*, 421 U.S. at 502.

Even if this Court had not already rejected application of a multi-factor balancing test in the context of legislative privilege, the district court's test is not persuasive on its own terms. That test considers such factors as "whether the evidence Plaintiffs seek is relevant," "whether other evidence is available," and "whether the litigation is sufficiently 'serious.'" ECF 100 at 9 (quoting *Bethune-Hill*, 114 F. Supp. 3d at 338). But most of these factors simply mirror the general standard for discovery of non-privileged material. *See* Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to material that is "relevant," considering, among other things, the "importance of the discovery in resolving the issues"). A privilege that is displaced whenever the litigation is "serious" and the material "relevant" has "little value." *Lee*, 908 F.3d at 1187-88 (citing *Tenney*, 341 U.S. at 377). Indeed, as the district court aptly noted,

"[a]ll litigation is serious." ECF 100 at 11. But "[a] privilege that gives way whenever its contents become relevant or even 'highly relevant' to an opposing party's arguments cannot serve [its] purpose." *In re Itron, Inc.*, 883 F.3d 553, 562 (5th Cir. 2018); *accord Upjohn Co.*, 449 U.S. at 383. Information that does not meet that definition would likely not be admissible, and may not be discoverable, even without a privilege. "Such a defeatable 'privilege' is hardly a privilege at all." *Itron*, 883 F.3d at 562.

## Conclusion

The Court should reverse the district court's order to the extent that it denied the Legislators' motion to quash the third-party subpoenas.

Respectfully submitted.

STEVE MARSHALL
Attorney General of Alabama

TIM GRIFFIN
Attorney General of Arkansas

CHRISTOPHER M. CARR
Attorney General of Georgia

RAÚL LABRADOR
Attorney General of Idaho

THEODORE E. ROKITA
Attorney General of Indiana

BRENNA BIRD
Attorney General of Iowa

DANIEL CAMERON
Attorney General of Kentucky

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

AUSTIN KNUDSEN
Attorney General of Montana

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JUDD E. STONE II
Solicitor General

/s/ Lanora C. Pettit
LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

WILLIAM F. COLE
Assistant Solicitor General

SARA BAUMGARDNER
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Attorneys for Amici Curiae*

MICHAEL T. HILGERS
Attorney General of Nebraska

GENTNER DRUMMOND
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

MARTY J. JACKLEY
Attorney General of South Dakota

SEAN D. REYES
Attorney General of Utah

JASON S. MIYARES
Attorney General of Virginia

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,819 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF SERVICE

On April 24, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Lanora C. Pettit
LANORA C. PETTIT