**23-10616**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

———————————

### LEROY PERNELL, et al.,

*Plaintiffs-Appellees,*

v.

### ROBERT ANDRADE, et al.,

*Movants-Appellants.*

———————————

**On Appeal from U.S. District Court for the Northern District of Florida**
**Case No.:  4:22-cv-304-MW-MAF**

———————————

### APPELLEES' RESPONSE BRIEF

———————————

Jerry C. Edwards
ACLU FOUNDATION OF FLORIDA
933 Lee Road, Suite 102
Orlando, FL  32810
(786) 363-1107
jedwards@aclufl.org

Charles McLaurin
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, D.C. 20005
(202) 216-5572
cmclaurin@naacpldf.org

Leah Watson
Sarah Hinger
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., Fl. 18
New York, NY 10004
(212) 549-2500
lwatson@aclu.org
shinger@aclu.org

Jason Leckerman
BALLARD SPAHR, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 864-8266
leckermanj@ballardspahr.com

*Counsel for Plaintiffs-Appellees*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Local Rules 26.1-2, Plaintiffs-Appellees certify that the following persons have or may have an interest in the outcome of this case or appeal, in addition to the individuals and entities named in Movants-Appellants' initial brief:

1. Baumgardner, Sara, *Counsel for Amicus Curiae the State of Texas*

2. Bird, Brenna, *Counsel for Amicus Curiae the State of Iowa*

3. Burgess, Tiffani, *Counsel for Plaintiffs-Appellees*

4. Cameron, Daniel, *Counsel for Amicus Curiae the State of Kentucky*

5. Carr, Christopher M., *Counsel for Amicus Curiae the State of Georgia*

6. Cole, William F., *Counsel for Amicus Curiae the State of Texas*

7. Drummond, Gentner, *Counsel for Amicus Curiae the State of Oklahoma*

8. Fitch, Lynn, *Counsel for Amicus Curiae the State of Mississippi*

9. Griffin, Tim, *Counsel for Amicus Curiae the State of Arkansas*

10. Hilgers, Michael T., *Counsel for Amicus Curiae the State of Nebraska*

11. Jackley, Marty J., *Counsel for Amicus Curiae the State of South Dakota*

12. Knudsen, Austin, *Counsel for Amicus Curiae the State of Montana*

13. Labrador, Raúl, *Counsel for Amicus Curiae the State of Idaho*

14. Landry, Jeff, *Counsel for Amicus Curiae the State of Louisiana*

15. Marshall, Steve, *Counsel for Amicus Curiae the State of Alabama*

16.    Miyares, Jason S., *Counsel for Amicus Curiae the State of Virginia*

17.    Pardue, Crystal, *Counsel for Plaintiffs-Appellees*

18.    Parsons, Emily, *Counsel for Plaintiffs-Appellees*

19.    Paxton, Warren Kenneth, *Counsel for Amicus Curiae the State of Texas*

20.    Pettit, Lanora C., *Counsel for Amicus Curiae the State of Texas*

21.    Reyes, Sean D., *Counsel for Amicus Curiae the State of Utah*

22.    Rakita, Theodore E., *Counsel for Amicus Curiae the State of Indiana*

23.    Stone, II, Judd E., *Counsel for Amicus Curiae the State of Texas*

24.    Webster, Brent, *Counsel for Amicus Curiae the State of Texas*

25.    Wilson, Alan, *Counsel for Amicus Curiae the State of South Carolina*

Plaintiffs-Appellees further state that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

The Court has calendared this case for July 18, 2023.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT ..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS............................................................................. ii

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF THE ISSUES.................................................................1

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE....................................................................4

STANDARD OF REVIEW ........................................................................8

SUMMARY OF THE ARGUMENT ............................................................9

ARGUMENT .......................................................................................12

  I.  Legislative Privilege is Qualified. ...................................................12

  II.  Section 1983 Cases Involve Important Federal Interests. ...........................15

    A.  The federal interest in § 1983 cases is akin to the interest in federal criminal prosecutions...........................................................16

    B.  The nature of claims, including equal protection claims, that turn on evidence of intent necessitates qualified application of legislative privilege to ensure that federal interests are not superseded. ...............................................21

    C.  This Court's precedent requires a context specific analysis of legislative privilege and the important federal interests at stake. ......................................24

  III.  Where Factual Information Is Covered by Legislative Privilege, the Privilege Yields in This Case..................................................................28

    A.  The purely factual discovery granted by the court is relevant. ...................29

    B.  Considering the availability of other evidence favors disclosure of the purely factual information here. .......................................................31

    C.  This litigation is sufficiently serious to warrant the discovery granted. ......32

    D.  The privilege's purpose is not served by withholding purely factual records............................................................................................32

IV.   Purely Factual Information Is Not Covered by Legislative Privilege.........33

   A.  The public interest served by legislative privilege is at its lowest where
   legislators are not a party to the litigation. ........................................................34

   B.  Distinguishing purely factual information properly accommodated the
   purposes of legislative privilege. .........................................................................36

   C.  The Legislators' arguments that they are absolutely shielded from
   discovery of factual information are unavailing.................................................39

CONCLUSION .......................................................................................................41

CERTIFICATE OF COMPLIANCE.......................................................................43

CERTIFICATE OF SERVICE ................................................................................43

# <u>TABLE OF AUTHORITIES</u>

## CASES

*ACORN v. Cnty. of Nassau*,
  No. CV05-2301, 2007 WL 2815810 (E.D.N.Y. Sept. 25, 2007) .................. 32, 37
*Ahern v. Boeing Co.*,
  701 F.2d 142 (11th Cir. 1983) ............................................................12
*Almonte v. City of Long Beach*,
  478 F.3d 100 (2d Cir. 2007) ...............................................................37
*Am. Trucking Ass'ns, Inc. v. Alviti*,
  14 F.4th 76 (1st Cir. 2021)........................................................... 13, 23
*Ameritas Variable Life Ins. Co. v. Roach*,
  411 F.3d 1328 (11th Cir. 2005) ............................................................9
*Ariel v. Jones*,
  693 F.2d 1058 (11th Cir. 1982) ...........................................................8
*Baldus v. Brennan*,
  Nos. 11-cv-562, 11-cv-1011, 2011 WL 6122542 (E.D. Wis. Dec. 8, 2011)........23
*Benisek v. Lamone*,
  241 F. Supp. 3d 566 (D. Md. 2017).......................................... 22, 23, 26
*Bethune-Hill v. Va. State Bd. of Elections*,
  114 F. Supp. 3d 323 (E.D. Va. 2015) ....................................... passim
*Bolin v. Story*,
  225 F.3d 1234 (11th Cir. 2000) ...........................................................18
*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir. 1981) .............................................................1
*Brown & Williamson Tobacco Corp. v. Williams*,
  62 F.3d 408 (D.C. Cir. 1995)...............................................................25
*Bruce v. Riddle*,
  631 F.2d 272 (4th Cir. 1980) ...............................................................37
*Burtnick v. McLean*,
  76 F.3d 611 (4th Cir. 1996) ......................................................... 25, 26
*Cannon v. Univ. of Chi.*,
  441 U.S. 677 (1979)...........................................................................16
*Centifanti v. Nix*,
  865 F.2d 1422 (3d Cir. 1989) ..............................................................19

*Clinton v. Jones,*
    520 U.S. 681 (1997) ............................................................................... 35

*Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections,*
    No. 11 C 5065, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011) ................. 23, 29, 32

*DiCarlo v. MoneyLion, Inc.,*
    988 F.3d 1148 (9th Cir. 2021) ............................................................... 16

*Doe v. Nebraska,*
    788 F. Supp. 2d 975 (D. Neb. 2011) ...................................................... 38

*Eastland v. U. S. Servicemen's Fund,*
    421 U.S. 491 (1975) ............................................................................... 14

*EEOC v. Wash. Suburban Sanitary Comm'n,*
    631 F.3d 174 (4th Cir. 2011) ............................................................ 39, 40

*Ex parte Virginia,*
    100 U.S. 339 (1879) ............................................................................... 16

*Farrar v. Hobby,*
    506 U.S. 103 (1992) ............................................................................... 17

*Favors v. Cuomo,*
    285 F.R.D. 187 (E.D.N.Y. 2012) ............................................................ 23

*Fisher v. United States,*
    425 U.S. 391 (1976) ............................................................................... 13

*Fla. Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dep't of Health &*
    *Rehab. Servs.,* 164 F.R.D. 257 (N.D. Fla. 1995) ............................. 22, 38

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ................................................................................. 9

*Greater Birmingham Ministries v. Merrill,*
    2:15cv2193 (N.D. Ala. 2017) ................................................................. 22

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.,*
    992 F.3d 1299 (11th Cir. 2021) ..................................................... passim

*Harris v. Ariz. Indep. Redistricting Comm'n,*
    993 F. Supp. 2d 1042 (D. Ariz. 2014), *aff'd,* 578 U.S. 253 (2016) ...... 30

*In re Certain Complaints Under Investigation,*
    783 F.2d 1488 (11th Cir. 1986) ......................................................... 18, 28

*In re Dinnan,*
    661 F.2d 426 (5th Cir. 1981) ............................................................ 12, 38

*In re Grand Jury,*
    821 F.2d 946 (3d Cir. 1987) ....................................... 11, 23, 34, 36

*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015) ................................................................ passim
*Jaffee v. Redmond*,
    518 U.S. 1 (1996)..................................................................................... 1, 13
*Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*,
    849 F.3d 615 (5th Cir. 2017) .......................................................................23
*Jordan v. Comm'r, Miss. Dep't of Corr.*,
    947 F.3d 1322 (11th Cir. 2020) ....................................................................8
*La Union Del Pueblo Entero v. Abbott*,
    No. 22-50435, 2023 WL 3494770 (5th Cir. May 17, 2023) ........................ 18, 23
*League of Women Voters of Fla. v. Fla. House of Representatives*,
    132 So. 3d 135 (Fla. 2013) ..........................................................................34
*League of Women Voters of Fla., Inc. v. Lee*,
    340 F.R.D. 446 (N.D. Fla. 2021) ............................................................ passim
*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
    507 U.S. 163 (1993).....................................................................................19
*Lee v. City of L.A.*,
    908 F.3d 1175 (9th Cir. 2018) ......................................................................24
*Lee v. Va. State Bd. of Elections*,
    No. 3:15cv357, 2015 WL 9461505 (E.D. Va. Dec. 23, 2015) ......................37
*Matter of Int'l Horizons, Inc.*,
    689 F.2d 996 (11th Cir. 1982) ......................................................................12
*Mitchum v. Foster*,
    407 U.S. 225 (1972).....................................................................................16
*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978).....................................................................................16
*Monroe v. Pape*,
    365 U.S. 167 (1961).....................................................................................16
*Nashville Student Organizing Comm. v. Hargett*,
    123 F. Supp. 3d 967 (M.D. Tenn. 2015).......................................................22
*Newman v. Piggie Park Enters., Inc.*,
    390 U.S. 400 (1968).....................................................................................17
*Owen v. City of Independence*,
    445 U.S. 622 (1980).....................................................................................19
*Page v. Va. State Bd. of Elections*,
    15 F. Supp. 3d 657 (E.D. Va. 2014) .............................................................23

*Perez v. Perry*,
   No. SA-11-cv-360-OLG, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014)...............23

*Pernell v. Fla. Bd. of Governors of State Univ.*,
   No. 22-13992-J, 2023 WL 2543659 (11th Cir. Mar. 16, 2023) ..........................31

*Pernell v. Lamb*,
   No. 22-13992 (11th Cir.) ..............................................................................5

*S.C. State Conf. of NAACP v. McMaster*,
   584 F. Supp. 3d 152 (D.S.C. 2022) ...............................................................26

*Scott v. Taylor*,
   405 F.3d 1251 (11th Cir. 2005) ....................................................................19

*Smith v. Town of Clarkton, N. C.*,
   682 F.2d 1055 (4th Cir. 1982) ......................................................................30

*Tenney v. Brandhove*,
   341 U.S. 367 (1951)....................................................................... 17, 18, 21

*Thompson v. Merrill*,
   No. 2:16-CV-783-ECM, 2020 WL 2545317 (M.D. Ala. May 19, 2020) ...........22

*Trammel v. United States*,
   445 U.S. 40 (1980).............................................................................. 12, 13

*Trump v. Vance*,
   140 S. Ct. 2412 (2020).......................................................................... 11, 35

*United States v. Beechum*,
   582 F.2d 898 (5th Cir. 1978) ..........................................................................1

*United States v. Bryan*,
   339 U.S. 323 (1950).....................................................................................12

*United States v. Gillock*,
   445 U.S. 360 (1980)............................................................................. passim

*United States v. Irvin*,
   127 F.R.D. 169 (C.D. Cal. 1989)............................................................ 23, 38

*United States v. Pipkins*,
   528 F.2d 559 (5th Cir. 1976) ........................................................................14

*United States v. Singleton*,
   260 F.3d 1295 (11th Cir. 2001) ......................................................................1

*United States v. Williams*,
   340 F.3d 1231 (11th Cir. 2003) .....................................................................28

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)............................................................................. passim

*Watts v. BellSouth Telecomms., Inc.*,
  316 F.3d 1203 (11th Cir. 2003) .......................................................................15
*Whitford v. Gill*,
  331 F.R.D. 375 (W.D. Wis. 2019) ....................................................................22
*Whitford v. Vos*,
  No. 19-2066, 2019 WL 4571109 (7th Cir. July 11, 2019) ................................22

## STATUTES

42 U.S.C. § 1983 .................................................................................................4
Fla. Stat. § 1000.05(4) .........................................................................................4
Fla. Stat. § 11.0431(1) ........................................................................................34

## OTHER AUTHORITIES

2022 Fla. Sess. Law Serv. 2022-72 (West)..........................................................4
William B. Rubenstein, *On What A "Private Attorney General" Is-and Why It Matters*, 57 Vand. L. Rev. 2129 (2004)................................................................16

## STATEMENT OF THE ISSUES

I.      Whether the district court—recognizing that Plaintiffs' equal protection claim implicates important federal interests "that impact thousands of faculty and students" in Florida's public colleges and universities, App. 533—abused its discretion by granting Plaintiffs access to the purely factual information before the Legislators at the time the Stop W.O.K.E. Act passed.

## INTRODUCTION

The bedrock principle of privilege law is that "privileges must be narrowly construed because they impede the search for truth." *United States v. Singleton*, 260 F.3d 1295, 1300 (11th Cir. 2001). "Truth is the essential objective of our adversary system of justice." *United States v. Beechum*, 582 F.2d 898, 908 (5th Cir. 1978).[1] Because evidentiary privileges inhibit the search for truth, their "purchase price" is "injustice." *Jaffee v. Redmond*, 518 U.S. 1, 18 (1996) (Scalia, J., dissenting). The risk of injustice is especially significant in this case where Plaintiffs assert constitutional claims that impact the rights of "thousands of faculty and students" in Florida's public universities. App. 533. Recognizing these important considerations, the district court followed this Court's instructions to the letter—protecting the legislative process without unduly impeding the search for truth.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

But the Legislators argue their privilege entitles them to more. They ask this Court to recognize a privilege of stunning reach and vigor—one that makes them absolutely immune to discovery requests in § 1983 cases. This theory contravenes the foundational principles of privilege law and discounts the important federal interests presented by this matter. The district court did not abuse its discretion in rejecting it.

In response to growing efforts to address systemic inequalities following the murder of George Floyd, Florida enacted the Stop Wrongs Against Our Kids and Employees Act ("Stop W.O.K.E. Act"),[2] a law that has achieved its purpose of stifling discussions of race and gender in the state's public universities and colleges. To vindicate their rights, Plaintiffs filed suit, asserting claims under the First Amendment's Free Speech Clause, the Fourteenth Amendment's Due Process Clause, and the Fourteenth Amendment's Equal Protection Clause.

Plaintiffs served subpoenas *duces tecum* on fourteen members of the Florida House of Representatives (the "Legislators"). In response, the Legislators filed a motion to quash the subpoenas. The district court granted in part and denied in part

---

[2] Plaintiffs' reference to the bill as the Stop W.O.K.E. Act is based on Governor DeSantis's legislative proposal that laid the foundation for the eventual law. *See Governor DeSantis Announces Legislative Proposal to Stop W.O.K.E. Activism and Critical Race Theory in Schools and Corporations*, Office of the Florida Governor (Dec. 15, 2021), https://www.flgov.com/2021/12/15/governor-desantis-announces-legislative-proposal-to-stop-w-o-k-e-activism-and-critical-race-theory-in-schools-and-corporations/.

the motion. The court denied Plaintiffs "the overwhelming majority" of the documents they sought, App. 541, explaining that, in so doing, it was addressing concerns about intrusion into the most sensitive aspects of the legislative process. The district court did not find these concerns triggered by requests for "purely factual documents," App. 528, granting Plaintiffs access to a limited universe of these records and allowing them to discover "some of the most relevant evidence" for their equal protection claim. App. 535. The court thus protected the legislative process while preventing the Legislators from entirely thwarting the search for truth.

The district court's measured approach followed precedent at every step of the process. Its holding that legislative privilege is qualified and yields to a sufficiently important federal interest accords with the directives of the Supreme Court and this Court's sister circuits. In recognizing that legislative privilege yields to an equal protection claim that vindicates public rights, the district court merely followed the well-worn trail courts throughout the country have blazed. Ultimately, the court adopted a procedure for legislative discovery that the Supreme Court endorsed in *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 n.20 (1977). This decision protected from intrusion the most important parts of the legislative process while still allowing Plaintiffs to obtain evidence critical to their equal protection claim.

The district court did not abuse its discretion. It properly balanced the competing interests here and adopted a narrow approach to legislative discovery that is fully supported by precedent. Its decision should therefore be affirmed.

## STATEMENT OF THE CASE

In April 2022, the State of Florida enacted the Stop W.O.K.E. Act. *See* 2022 Fla. Sess. Law Serv. 2022-72 (West). This law severely curtails the discussion of race, gender, and systemic inequalities in Florida's public higher-education institutions. *See* Fla. Stat. § 1000.05(4). On August 18, 2022, Plaintiffs LeRoy Pernell, Sharon Austin, Dana Thompson Dorsey, Shelley Park, Russell Almond, Jennifer Sandoval, Marvin Dunn, and Johana Dauphin filed a lawsuit under 42 U.S.C. § 1983 asserting that the Stop W.O.K.E. Act violates the First and Fourteenth Amendments to the U.S. Constitution. App. 54, 72. Specifically, they alleged that the law violates the First Amendment's Free Speech Clause, that it is unconstitutionally vague under the Fourteenth Amendment's Due Process Clause, and that it was enacted with a racially discriminatory purpose in violation of the Fourteenth Amendment's Equal Protection Clause. App. 59, 134–41. Defendants have denied Plaintiffs' allegations that the Stop W.O.K.E. Act violates the First and Fourteenth Amendments. *See, e.g.*, App. 392, 432–37.

On August 24, 2022, Plaintiffs filed a motion for a preliminary injunction. *See* App. 37. In that motion, Plaintiffs asserted vagueness and free speech claims, but

4

not their equal protection claim. *See* App. 225 n.41, 232, 255. The district court issued an order preliminarily enjoining enforcement of the higher-education provisions of the Stop W.O.K.E. Act on November 17, 2022, holding that there is a substantial likelihood that the law imposes impermissible viewpoint discrimination and is unconstitutionally vague. *See* App. 254–55, 272, 283–86. That order is currently before this Court in a separate appeal. *See Pernell v. Lamb*, No. 22-13992 (11th Cir.).

In November 2022, Plaintiffs served subpoenas on thirteen co-sponsors of the Stop W.O.K.E. Act and a legislator who supported the bill during debate.[3] *See* App. 483 & n.1. The subpoenas requested the production of certain documents.[4] *See* App. 456–72. Plaintiffs sought these documents to support their equal protection claim,

---

[3] Representatives Melony Bell, David Borrero, Juan Fernandez-Barquin, Randy Fine, Randy Maggard, Ralph Massullo, Stan McClain, Toby Overdorf, Bobby Payne, Rick Roth, Jason Shoaf, Tyler Sirois, and Keith Truenow were co-sponsors of the Stop W.O.K.E. Act. App. 483. Representative Alex Andrade spoke out in support of the law during debate over the bill, characterizing concern over it as "fear that the market cornered on victimhood is suddenly being jeopardized." App. 99, 483–84.

[4] The stated time period was January 1, 2020, to the date of the subpoena. App. 468. The documents requested included, *inter alia*, documents encompassing research, analyses, white papers, studies, and reports regarding the creation, enactment, implementation, or impact of the Stop W.O.K.E. Act, as well as transcripts of speeches, radio appearances, and television appearances; and other constituent-facing documents discussing the Stop W.O.K.E. Act, Critical Race Theory, Black Lives Matter, or racial justice protests. App. 471–72.

which ultimately turns on whether race was a motivating factor in the enactment of the challenged law.[5] *See, e.g.*, App. 484–85, 490–91. Under this Court's precedent, "the impact of the challenged law," as well as "the foreseeability of the disparate impact," the "knowledge of that impact," "the contemporary statements and actions of key legislators," and "the availability of less discriminatory alternatives," are pertinent to the inquiry into discriminatory motive. *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021). Courts consider these "relevant evidentiary factors," among others, as part of a totality-of-the-circumstances test. *Id.* at 1321. The documents Plaintiffs seek go to the heart of these factors.

After receiving the subpoenas, the Legislators filed a motion to quash.[6] *See* App. 440. The district court granted the motion in part and denied it in part. App.

---

[5] The Legislators make much of the allegedly vast scope of the subpoenas. *See* Legislators' Br. 5, 16–17. Plaintiffs dispute this characterization, as the requests were crafted to uncover information relevant to their equal protection claim. *See, e.g.*, App. 482–85. Indeed, the district court found that the subpoenas were seeking relevant information. *See* App. 538 ("[T]he information requested is certainly relevant to Plaintiffs' underlying equal protection claim."). Regardless, these disputes are immaterial to the issues before this Court on appeal.

[6] Plaintiffs negotiated with the Legislators for over a month to avoid litigation, offering to narrow the subpoenas and sending a list of proposed search terms to provide additional clarity. *See* App. 485. The Legislators' final offer was to search only seven narrow terms and turn over the few documents they expected that search would turn up. *See* App. 485–86. Plaintiffs rejected that offer but noted that they remained willing to engage with the Legislators on narrowing any search terms that were presumably too broad. *See* App. 485–86, 501–02 n.10.

541. It first ruled that the common-law legislative privilege extends to all documents that reflect the mental processes or subjective motivations of the Legislators or their staffs, and foreclosed discovery of this material "to avoid unduly chilling legislative deliberations." App. 535 (citation omitted). Second, the court ruled that legislative privilege does not reach purely factual information. *See* App. 526–29. Third, it held that if the privilege does encompass purely factual information, it is qualified and yields to the important federal interests in this matter. App. 529–35. This is because "Plaintiffs are seeking to vindicate public right[s] that impact thousands of faculty and students, and in that respect, their equal protection claim is akin to criminal prosecutions." App. 533. The district court also concluded that Plaintiffs are seeking "highly relevant" evidence, regarding "the subjective motivations of [the Act's] leading sponsors," and that the evidence is not reasonably available from other sources. App. 532–33. Next, the court discussed the purpose of legislative privilege and observed that it is necessary to shield legislators from "political wars of attrition" waged through litigation and to protect the most sensitive aspects of the legislative process. App. 534 (quoting *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 457 (N.D. Fla. 2021)). After weighing these competing considerations, the district court allowed Plaintiffs to discover only "purely factual documents." App. 528, 541. It also narrowed the timeframe of Plaintiffs' requests and the scope of their definitions and search terms. App. 540–41.

7

Because Plaintiffs did not appeal the district court's order, the discovery requests excluded and narrowed by its decision are not at issue in this appeal. Only the factual documents the district court allowed Plaintiffs to discover—i.e., "bill drafts, bill analyses, white papers, studies, and news reports provided by or to the Legislators and their staff members," App. 528, 541—are in dispute.

The Legislators filed a timely notice of appeal and sought a stay. *See* App. 545, 549–556. Despite holding that the Legislators are not likely to succeed on the merits, the district court stayed the order at issue here pending the resolution of this appeal. App. 562–65.

## STANDARD OF REVIEW

This Court "review[s] a district court's decision on whether to quash a subpoena only for an abuse of discretion." *In re Hubbard*, 803 F.3d 1298, 1307 (11th Cir. 2015). "A judge abuses his discretion only when his discretion is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision." *Ariel v. Jones*, 693 F.2d 1058, 1060 (11th Cir. 1982) (citation omitted); *see also Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1326–27 (11th Cir. 2020) ("[W]e will leave the district court's ruling on the motion undisturbed unless the district court has made a clear error of judgment, or has applied the wrong legal standard." (citation omitted)). In plain English, this means "that the [district] court has a range of choice," and "its decision will not be

disturbed as long as it stays within that range and is not influenced by any mistake of law." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citation omitted). "[D]eference [to the trial court] is the hallmark of abuse-of-discretion review." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997).

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's order. The Legislators' stance that they are absolutely immune from providing even purely factual information in response to discovery in § 1983 cases, regardless of the importance of the federal interests presented in the matter, is out of step with precedent. The district court properly rejected this extreme position.

The district court correctly recognized—in accordance with Supreme Court and circuit precedent—that legislative privilege is qualified and may be overcome by "important federal interests." *United States v. Gillock*, 445 U.S. 360, 373 (1980). Plaintiffs are pursuing constitutional claims through § 1983, a statutory scheme Congress designed to enable litigants, acting as "private attorney generals," to further the federal interest in ensuring state actors' adherence to federal constitutional and civil rights. Moreover, because the constitutional right to equal protection turns on the intent of the legislature, legislative privilege must be construed as qualified and carefully balanced in these cases to ensure that comity to state legislators does not supersede enforcement of federal law. Both precedent and

the principles behind legislative privilege make clear that it is a qualified privilege that may be superseded when a federal claim such as the one before this Court is determined by the intent or motivation of the legislature.

The Supreme Court acknowledged as much in *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, where it recognized the import of evidence of legislative motive and the need for discovery in these circumstances. 429 U.S. at 270. Following *Arlington Heights* and other established precedent, the district court weighed this important federal interest and Plaintiffs' need for the discovery against the Legislators' interests protected by the privilege to craft a careful and narrow discovery order allowing Plaintiffs to obtain purely factual information crucial to their equal protection claim.

If purely factual information is subject to legislative privilege, the district court did not abuse its discretion in finding that the privilege must yield in this case, particularly in light of the narrow scope of discovery drawn by the court. Legislative motive is at the heart of the equal protection claim, and the availability of some other evidence does not discount the need for this evidence where intent must be proved through the totality of circumstantial evidence. *See Greater Birmingham Ministries*, 992 F.3d at 1322. Having survived a motion to dismiss, Plaintiffs present a strong claim under recognized legal standards indicating that discovery is likely to yield additional relevant evidence, and seek to "vindicate public right[s] that impact

thousands of faculty and students" in Florida's institutions of higher education. App. 533. In light of these factors, the district court did not abuse its discretion in balancing legislative privilege to allow for the narrow discovery into purely factual information before the legislature at the time the Stop W.O.K.E. Act was enacted.

Moreover, the district court did not abuse its discretion in finding that purely factual information is not subject to legislative privilege here. This holding is supported by case law and the justifications for the existence of legislative privilege. The discovery of factual information in a case in which legislators are not a party to the litigation does not raise the same concerns with burdening legislative deliberations by chilling candor considered in other cases. Rather, at most, it implicates their interest in avoiding distraction from legislative duties. Distraction alone is neither a basis for an absolute privilege against discovery for sitting U.S. presidents, nor one for state legislators. *See Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020); *In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987).

The district court acted within its discretion in granting limited discovery into the factual information before the legislature at the time it enacted the Stop W.OK.E. Act, and its decision should be affirmed.

# ARGUMENT

## I.    Legislative Privilege is Qualified.

State legislative privilege is a qualified privilege that, when it applies, affords state legislators a limited evidentiary privilege governed by federal common law, as applied through Rule 501 of the Federal Rules of Evidence ("FRE"). If there is a "guiding star in the constellation" of judge-made privileges, *Ahern v. Boeing Co.*, 701 F.2d 142, 145 (11th Cir. 1983), it is that evidentiary privileges are "strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (citation omitted).[7] This is because privileges contravene the "fundamental maxim that the public . . . has a right to every man's evidence." *United States v. Bryan*, 339 U.S. 323, 331 (1950) (citation omitted).

As this Court has explained, since "[t]he basis of justice is the truth," "our system frowns upon impediments to ascertaining that truth." *In re Dinnan*, 661 F.2d

---

[7] Notably, the Supreme Court in *Trammel* narrowed a longstanding common-law privilege, the privilege against adverse spousal testimony, because it was no longer promoting a public good. *See* 445 U.S. at 43–46, 50–53. So even well-established privileges are subject to these limiting principles.

426, 427 (5th Cir. 1981).[8] Privileges should therefore "be recognized only within the narrowest limits required by principle." *Id.* at 429 (citation omitted); *see also Jaffee v. Redmond*, 518 U.S. 1, 18–19 (1996) (Scalia, J., dissenting) (noting that courts should "construe narrowly the scope of existing privileges"); *Fisher v. United States*, 425 U.S. 391, 403 (1976) (holding that a privilege "applies only where necessary to achieve its purpose").

The "public good" served by legislative privilege, *Trammel*, 445 U.S. at 50, is to "protect[] the legislative process." *In re Hubbard*, 803 F.3d at 1308. The privilege is based in principles of comity, protecting the independence of state legislators by allowing "the breathing room necessary to make [difficult choices] in the public's interest without fear of undue judicial interference or personal liability." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 332–333 (E.D. Va. 2015) (citation omitted); *see also Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 87 (1st Cir. 2021). It also addresses concerns that "complying with such requests detracts from the performance of official duties." *In re Hubbard*, 803 F.3d at 1310.

To properly assess the public good served by legislative privilege, it is also important to identify its limitations. Unlike the federal legislative privilege, which is rooted in the text of the U.S. Constitution's Speech or Debate Clause and safeguards

---

[8] *In re Dinnan* is binding precedent in the Eleventh Circuit. *See Matter of Int'l Horizons, Inc.*, 689 F.2d 996, 1004 n.17 (11th Cir. 1982).

the separation of powers, state legislative privilege is a matter of federal common law. "[F]ederal interference in the state legislative process is not on the same constitutional footing" with interference by the federal courts in a co-equal branch of government. *Gillock*, 445 U.S. at 370. Legislative privilege must be applied with recognition that "the Supremacy Clause dictates that federal enactments will prevail over competing state exercises of power."[9] *Id.* Thus, legislative privilege must be construed "strictly . . . within the narrowest possible limits consistent with the logic of its principle." *United States v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976) (citation omitted). *Contra Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 501–02 (1975) (holding that Congress's Speech or Debate Clause privilege must be construed "broadly to effectuate its purposes."). For this reason, "where important federal interests are at stake, . . . comity yields," and legislative privilege will not bar discovery. *Gillock*, 445 U.S. at 373.

The district court, consistent with this Court's precedent, weighed the qualified legislative privilege against the presence of important federal interests in this case.

---

[9] As the Supreme Court further recognized in *Gillock*, Congress had multiple avenues available to it to provide state legislators with an evidentiary privilege as broad as its own under the Speech or Debate Clause and chose none of those courses. 445 U.S. at 374.

## II.    Section 1983 Cases Involve Important Federal Interests.

Federal claims that turn on intent or motive, including civil rights cases brought under section 1983 in which motive is a central element of the claim, are among those explicitly recognized by courts as involving important federal interests against which legislative privilege may yield. Indeed, *Arlington Heights*, the case where the Supreme Court set out the framework for establishing discriminatory intent through circumstantial evidence, explicitly recognized that legislative privilege must be qualified so as not to thwart the important federal interests in enforcing the Equal Protection Clause. 429 U.S. at 268. This recognition does not require that legislative privilege must always yield, but it does not allow the privilege afforded state legislators to prevail to the point of superseding federal rights. In arguing that legislative privilege is absolute in section 1983 cases, Legislators' Br. at 19-27, the Legislators asks this Court to go beyond the scope of this case, which raises an equal protection challenge, to rule that legislative privilege is absolute in all cases brought under § 1983.[10] Further, they ask the Court to contradict both precedent and principle.

---

[10] "[J]udicial decisions cannot make law beyond the facts of the cases in which those decisions are announced." *In re Hubbard*, 803 F.3d at 1314–15 (quoting *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003)).

**A. The federal interest in § 1983 cases is akin to the interest in federal criminal prosecutions.**

There is a strong federal interest in litigation under § 1983. Section 1983 permits private individuals to file suit in federal court to assert a violation of their federal constitutional and statutory rights. The statute was enacted "because, by reason of prejudice, passion, neglect, intolerance, or otherwise, . . . the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies." *Monroe v. Pape*, 365 U.S. 167, 180 (1961), *overruled on other grounds*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978). Thus, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879)).

Section 1983 lawsuits are brought by private litigants as a means of advancing the government's interest in enforcing federal laws, and as such are often referred to as "private attorney general" lawsuits. *See generally* William B. Rubenstein, *On What A "Private Attorney General" Is-and Why It Matters*, 57 Vand. L. Rev. 2129, 2147 (2004). *Cf. Cannon v. Univ. of Chi.*, 441 U.S. 677, 705–706 (1979) (recognizing that private lawsuits support the federal government's work, "and in

some cases [are] even necessary to [ ] the orderly enforcement of [civil rights] statute[s]"). To encourage these private lawsuits in furtherance of the public good, Congress provided for fee shifting to prevailing plaintiffs in § 1983 suits. *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1155 (9th Cir. 2021). The fee shifting provision attached to § 1983 acts as "a tool that ensures the vindication of important rights . . . by making attorney's fees available under a private attorney general theory." *Farrar v. Hobby*, 506 U.S. 103, 122 (1992) (O'Connor, J., concurring); *see also Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (per curiam).

Thus, § 1983 lawsuits uniquely further federal interests. For this reason, if they are taken categorically, as the Legislators urge, they are closer in circumstance to federal criminal prosecutions, *Gillock*, 445 U.S. at 370, than to the undifferentiated range of civil lawsuits brought by individual litigants. *See League of Women Voters of Fla., Inc.*, 340 F.R.D. at 456 ("[S]ome civil cases implicate federal interests that are at least as important—if not more important—than the enforcement of federal criminal statutes, where the privilege undoubtedly gives way.").

The Legislators' argument for a bright line between *Gillock*'s recognition of the federal interests at stake in criminal prosecutions and the interests in § 1983

lawsuits is not grounded in that case or any other case ruling on the issue.[11] Instead, their argument rests on the assertion that legislators' immunity from suit should extend to an absolute immunity from discovery in civil cases. Legislators' Br. at 23 (citing *Tenney v. Brandhove*, 341 U.S. 367 (1951)). Their position ignores *Gillock*, 445 U.S. at 370, which clearly found legislators' testimonial privilege to be qualified notwithstanding their immunity from prosecution, and numerous other cases following *Tenney* and recognizing that legislative testimonial privilege is qualified. *See, e.g.*, *Arlington Heights*, 429 U.S. at 268; *infra* section II.B. To the extent that the Fifth Circuit's recent decision in *La Union Del Pueblo Entero v. Abbott*, No. 22-50435, 2023 WL 3494770, at *5 (5th Cir. May 17, 2023), adopted the reasoning from cases discussing immunity from suit to address the testimonial privilege, it erred in failing to fully grapple with the implications for important federal interests. However, it is also clear that the Fifth Circuit did not intend its decision to establish such a broad holding beyond the case before it. In its opinion, the Fifth Circuit cited *Arlington Heights* as an example of a case where legislative privilege may yield, *id.*, and clearly recognized that the testimonial privilege for legislators is not absolute, including in civil cases.

---

[11] Indeed, the Legislators concede that this issue is unresolved. *See* Legislators' Br. at 14 n.2.

The differentiation between immunity from suit and testimonial privileges is also consistent with the approach to immunities and privileges shielding other governmental officials. For example, federal judges have an absolute immunity from both individual and official capacity suits, but only a qualified evidentiary privilege. *See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (per curiam) (granting "absolute immunity to the defendant federal judges" for their judicial acts); *In re Certain Complaints Under Investigation*, 783 F.2d 1488, 1520 (11th Cir. 1986) (holding that there is a qualified privilege "protecting confidential communications among judges and their staffs in the performance of their judicial duties"). The same is true of state supreme court justices acting in their legislative capacity. *See Scott v. Taylor*, 405 F.3d 1251, 1254 n.4 (11th Cir. 2005) (observing that state supreme court justices' legislative immunity applies to "both [their] individual and official capacities"); *Centifanti v. Nix*, 865 F.2d 1422, 1432 (3d Cir. 1989) (applying the deliberative process privilege, a qualified privilege, to a state supreme court justice engaged in rulemaking).

The Legislators' arguments that the testimonial privilege is co-extensive with immunity from suit further misunderstands the locus of the federal interest at issue. While legislators are immune from suit under § 1983, it is equally clear that state laws are susceptible to constitutional and civil rights challenges through § 1983. *See, e.g.*, Fed. R. Civ. P. 5.1 (contemplating suits challenging the constitutionality of state

laws and requiring notice to the state attorney general if the parties do not include "the state, one of its agencies, or one of its officers or employees in an official capacity"); *cf. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166 (1993); *Owen v. City of Independence*, 445 U.S. 622 (1980). Thus, while individual legislators are not the immediate defendants in § 1983 lawsuits, they are likely to have evidence relevant to valid claims that a state law was passed with discriminatory intent and thus violates federal law.

The federal interests at stake in these circumstances are the same as those at issue in a criminal prosecution: the ability to uncover the truth through the legal process so that federal laws are properly enforced and justice prevails. The federal interest is in the case itself; it does not turn on whether the legislator is a direct party to the suit. Conversely, the danger that federal interests may be superseded by the interests of state actors exists whether the privilege is asserted by a party to the litigation or by a third party who possesses evidence centrally relevant to the claim.

Litigation under § 1983 presents those circumstances in which the courts must evaluate claims of legislative privilege within the context of the case to ensure that it does not unduly hinder the ability to vindicate important federal interests.

**B. The nature of claims, including equal protection claims, that turn on evidence of intent necessitates qualified application of legislative privilege to ensure that federal interests are not superseded.**

The need for qualified application of legislative privilege to preserve the supremacy of federal interests in civil cases is clear in the context of litigation raising claims that turn on the intent or motive of the legislature, such as equal protection claims. The adjudication of equal protection claims necessarily involves the evaluation of evidence of intent. Under these circumstances, the Supreme Court clearly contemplated that the interests in adjudicating the federal right may outweigh legislative privilege.

In *Arlington Heights*, the Supreme Court considered a civil lawsuit alleging a violation of the Equal Protection Clause. The Court explained that "determining whether invidious discriminatory purpose was a motivating factor," the central element of an equal protection violation, "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. The Court identified a non-exhaustive summary of "subjects of proper inquiry in determining whether racially discriminatory intent existed." *Id.* at 268. Chief among these, the Court indicated that "the legislative or administrative history may be highly relevant." *Id.* The Court further explained that although privilege will frequently preclude testimony by government officials, "[i]n some extraordinary

instances the members might be called to the stand at trial to testify concerning the purpose of the official action." *Id.* (citing *Tenney*) (additional citations omitted).

The Legislators argue that the Court in *Arlington Heights* referred "more generally to 'members' of government bodies," and meant only that some other governmental actors whose privilege was not recognized at the time might be subject to discovery. Legislators' Br. at 26. But the Supreme Court clearly contemplated that evidence from state legislators would be relevant and discoverable, irrespective of legislative privilege. The Court identified the very first category of relevant evidence as the "*legislative* [ ] history," *Arlington Heights*, 429 U.S. at 268 (emphasis added), and concluded that in some instances "members might be called to the stand," squarely recognizing that this would involve "judicial inquiries into *legislative* [ ] motivation." *Id.* at 268 & n.18 (emphasis added).

The need to apply a qualified legislative privilege where motive is central to the claims is also supported by legislative redistricting cases, in which the legal claims also turn on intent. *See Benisek v. Lamone*, 241 F. Supp. 3d 566, 574 n.8 (D. Md. 2017) (Niemeyer, Circuit J.) (analyzing *Arlington Heights* and concluding that legislative privilege is qualified in the similar context of voting rights cases). In this context, there is a "litany of recent federal decisions in which . . . federal courts have found that the [state legislative] privilege did not (at least in part) shield state legislators from producing responsive records or testifying at deposition." *Nashville*

*Student Organizing Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015) (collecting cases); *see also, e.g.*, *League of Women Voters of Fla., Inc.*, 340 F.R.D. at 456; *Fla. Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 268 (N.D. Fla. 1995); *Thompson v. Merrill*, No. 2:16-CV-783-ECM, 2020 WL 2545317, at *3 (M.D. Ala. May 19, 2020); *Whitford v. Gill*, 331 F.R.D. 375, 378–79 (W.D. Wis. 2019),[12] *order vacated as moot Whitford v. Vos*, No. 19-2066, 2019 WL 4571109 (7th Cir. July 11, 2019); *Greater Birmingham Ministries v. Merrill*, 2:15cv2193 (N.D. Ala. 2017); *Bethune-Hill*, 114 F. Supp. 3d at 337; *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *6 (N.D. Ill. Oct. 12, 2011); *Perez v. Perry*, No. SA-11-cv-360-OLG, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014); *Benisek*, 241 F. Supp. 3d at 572; *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657 (E.D. Va. 2014); *Favors v. Cuomo*, 285 F.R.D. 187, 219 (E.D.N.Y. 2012); *Baldus v. Brennan*, Nos. 11-cv-562, 11-cv-1011, 2011 WL 6122542 (E.D. Wis. Dec. 8, 2011); *United States v. Irvin*, 127 F.R.D. 169 (C.D. Cal. 1989). In many of these cases, courts granted more burdensome discovery, including depositions.

Multiple of this Court's sister circuits have also concluded that legislative privilege is not absolute. The Third and Fifth Circuits have each held that the

---

[12] *Whitford* was a majority decision of a three-judge panel, including Seventh Circuit Judge Kenneth Ripple.

privilege is qualified. *See Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) ("While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified." (citation omitted));[13] *In re Grand Jury*, 821 F.2d at 959 (explaining that state legislators are at most entitled to a deliberative process privilege, which can be overcome). And the First and Ninth Circuits have implied the same. *Am. Trucking Ass'ns*, 14 F.4th at 87, 88 (recognizing that "there might be a private civil case in which state legislative immunity must be set to one side because the case turns so heavily on subjective motive or purpose"); *Lee v. City of L.A.*, 908 F.3d 1175, 1187 (9th Cir. 2018) (noting that "the Supreme Court has not set forth the circumstances under which the privilege must yield").

## C. This Court's precedent requires a context specific analysis of legislative privilege and the important federal interests at stake.

No court of appeals has adopted the Legislators' sweeping interpretation of the state legislative privilege as invariably applying in all civil litigation, no matter how much its application would frustrate enforcement of federal law. This Court's decision in *In re Hubbard*, 803 F.3d at 1315, is consistent with cases finding that

---

[13] As discussed above, while the Fifth Circuit adopted an erroneously broad interpretation of legislative privilege in *La Union Del Pueblo Entero*, the court still recognized that legislative privilege is not absolute and may yield in at least some civil cases. 2023 WL 3494770, at *5 (citing *Arlington Heights*, 429 U.S. 252).

legislative privilege may give way where evidence of motive is necessary to adjudicate a federal right.

The Court in *Hubbard* found that legislative privilege was not superseded because evidence of motive was immaterial to the legal claim in the case before it. *Id.* at 1312. The Court reasoned that "as a matter of law, the First Amendment does not support . . . a challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it," and therefore, the claim "[did] not legitimately further an important federal interest in this context."[14] *Id.* Equal protection cases present directly contrary circumstances, where the subjective motivations of the lawmakers are the core of a valid legal claim.

Indeed, the Court was clear in *Hubbard* that the "decision should not be read as deciding whether, and to what extent, the legislative privilege would apply to a subpoena in a private civil action based on a different kind of constitutional claim," *id.* at 1312 n.13; and that "the question is a different one" if the "legal legitimacy of the claim" is established. *Id.* at 1314. The equal protection claim in this case presents just such a different constitutional claim, proceeding on the theory established in this

---

[14] This Court could have ruled in *Hubbard* that the lawmakers had an absolute immunity from discovery requests in § 1983 cases. Instead, it spent considerable time analyzing whether the case presented an important federal interest. *See id.* at 1311–15.

Court's and the Supreme Court's precedent, and having survived a motion to dismiss.

The Legislators' suggestion that the D.C. Circuit has adopted an absolute evidentiary privilege for state legislators, Legislators' Br. 13, is simply incorrect. The case cited for the proposition, *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995), addressed the privilege of federal lawmakers under the Speech or Debate Clause. The Supreme Court has made clear that the two "are not on the same constitutional footing." *Gillock*, 445 U.S. at 370.

Their assertion that the Fourth Circuit has adopted an absolute privilege is similarly misplaced. In the case cited, *Burtnick v. McLean*, 76 F.3d 611 (4th Cir. 1996), the Fourth Circuit remanded the decision after the district court erroneously held that municipalities were immune from suit and therefore "did not decide[] the issue of . . . testimonial privilege." *Id.* at 613. While the court observed in dicta that the "testimony of members of the Board as to their motives" would not be available, *id.*, it said nothing about the availability of other evidentiary materials and certainly did not establish a blanket immunity from discovery. Courts within the Fourth Circuit have recognized that *Burtnick* does not compel an absolute privilege. *See S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d 152, 162 & n.3 (D.S.C. 2022) (rejecting the theory that *Burtnick* compels an absolute privilege in "a case involving federal interests protecting public rights"); *Bethune-Hill*, 114 F. Supp. 3d

at 334 (same); *see also Benisek*, 241 F. Supp. 3d at 572–75 (rejecting state legislators' claims of absolute privilege); *id.* at 574 n.8 (noting that "*Arlington Heights* counsels against recognizing an absolute privilege").

\* \* \*

Lawsuits brought under § 1983 raising equal protection claims involve important federal constitutional claims that succeed or fail on the element of discriminatory intent. While the importance of these interests does not always or entirely supersede legislative privilege, these are precisely the type of cases in which courts must engage in a careful, context specific examination to ensure that legislative privilege, extended as a matter of comity, does not foreclose the ability to vindicate an important federal right. *See, e.g., Benisek*, 241 F. Supp. 3d at 574 (holding that "[courts] must balance the significance of the federal interests at stake against the intrusion of the discovery sought and its possible chilling effect on legislative action," and granting discovery).

Indeed, in *Arlington Heights*, the Supreme Court considered such a careful approach. The Court found no abuse of the district court's discretion where plaintiffs were not permitted to question local legislators about their motivations, but "were allowed, both during the discovery phase and at trial, to question Board members fully about materials and information available to them at the time of decision." *Id.*

at 270 n.20. As set forth further below, the district court followed a similarly considered approach here and did not abuse its discretion.

### III.    Where Factual Information Is Covered by Legislative Privilege, the Privilege Yields in This Case.

The district court correctly assessed several factors to devise a discovery order that recognized legislative privilege in an appropriately qualified manner to allow for the adjudication of federal equal protection claims that turn on intent or motive. Specifically, the Court considered: "whether the evidence Plaintiffs seek is relevant," "whether other evidence is available," "whether the litigation is sufficiently 'serious,'" and "whether upholding the subpoena defeats the legislative privilege's purpose."[15] App. 531 (citing *Bethune-Hill*, 114 F. Supp. 3d at 338). *Cf. In re Certain Complaints Under Investigation*, 783 F.2d at 1522 (creating a similar balancing test for the judicial privilege). In the evaluation of these factors, the district court is subject to review only for "clear error." *United States v. Williams*, 340 F.3d 1231, 1234 (11th Cir. 2003). It did not err in analyzing these factors to reach a carefully crafted discovery order.

---

[15] As the district court recognized, an additional factor "whether the government is involved in the litigation," goes to the deliberate process privilege and is not relevant to claims of evidentiary legislative privilege. App. 531 n.3, 534.

**A. The purely factual discovery granted by the court is relevant.**

Plaintiffs easily satisfy the first factor because the subpoenaed documents are undoubtedly relevant to their equal protection claim. "A successful equal protection claim under the Fourteenth Amendment requires proof of [ ] an intent to discriminate." *Greater Birmingham Ministries*, 992 F.3d at 1321; *see also Arlington Heights*, 429 U.S. at 265. To prevail, Plaintiffs must establish that racial discrimination is *a* motivating factor, but not that it was the sole, dominant, or primary concern. *Id.* at 266. As the district court properly found, the subpoenaed documents seek to establish "the subjective motivations of [the Stop W.O.K.E. Act's] leading sponsors [and] are highly relevant to many of the issues before this Court." App. 532.

The Legislators argue, contrary to Supreme Court precedent, that the factual content of the subpoenaed documents is not relevant; only the members' review or contribution to these materials would be probative of discriminatory purpose. Legislators' Br. at 11. However, *Arlington Heights* requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" and anticipated that "[t]he legislative . . . history may be highly relevant." 429 U.S. at 266, 268; s*ee also Comm. for a Fair & Balanced Map*, 2011 WL 4837508 at *3 ("To demonstrate intentional discrimination, . . . plaintiffs need not offer direct evidence

of discriminatory intent."). As the district court stated, "just because other evidence is more relevant does not make this evidence irrelevant." App. 532. Circumstantial evidence of intent includes foreseeability and awareness of a disparate impact, as well as the availability of less discriminatory alternatives. *See Greater Birmingham Ministries*, 992 F.3d at 1322. These specific points of evidence address factual information pertinent to the legislative intent. The district court's grant of discovery into factual information in this case is directly relevant to these factors.

This Court in *Greater Birmingham Ministries* noted that ascertaining discriminatory intent can be difficult, but on distinguishable facts. *See* 992 F.3d at 1324. There, the panel was skeptical that "the statements of one legislator speaking about another bill" could be imported as discriminatory intent and that the evidence was "unconnected to the passage of the actual law in question." *Id.* Here, Plaintiffs sought factual documents, such as bill drafts, bill analyses, white papers, studies, and news reports, provided by or to thirteen co-sponsors of the challenged legislation and a legislator who supported the bill during debate. While a single sponsor's motivations may not reflect all legislators, corroborating evidence from fourteen legislators would surely be more probative. *See id.* Though circumstantial, the subpoenaed information remains relevant to Plaintiffs' equal protection claim.

**B. Considering the availability of other evidence favors disclosure of the purely factual information here.**

The district court did not err in finding this factor weighed against denying the motion to quash. App. 533. As the court recognized, although Plaintiffs sought evidence through other means, there is no assurance that it will be obtained. *Id*. Further, the Legislators here sought protection from producing *any* documents through discovery. *Id.* (contrasting *League of Women Voters of Florida, Inc.*, 340 F.R.D. at 452, in which legislators agreed to produce documents but sought protection from depositions).

Additionally, because federal equal protection claims turn on the sum body of circumstantial evidence, *Greater Birmingham Ministries*, 992 F.3d at 1321, the existence of the indicia of discrimination from other sources here weighs in favor of discovery, suggesting that discovery is likely to produce relevant evidence. The public legislative record will often not provide sufficient evidence in these cases because government officials "seldom, if ever, announce on the record that they are pursuing a particular course of action because of [a] desire to discriminate." *Smith v. Town of Clarkton, N. C.*, 682 F.2d 1055, 1064 (4th Cir. 1982); *see also Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1070–71 (D. Ariz. 2014), *aff'd*, 578 U.S. 253 (2016) ("[i]n the event that plaintiffs' claims have merit, and that the commissioners were motivated by an impermissible purpose, the commissioners

would likely have kept out of the public record evidence making that purpose apparent.").

## C. This litigation is sufficiently serious to warrant the discovery granted.

The district court recognized, as set forth above, that this case involves the adjudication of important federal interests. App. 533. Further, the court recognized that the equal protection rights Plaintiffs are seeking to vindicate in this case "impact thousands of faculty and students." *Id.* Moreover, Plaintiffs' claims are not unavailable as a matter of law, *see In re Hubbard*, 803 F.3d at 1312, but present valid, if contested, legal questions. Indeed, the district court granted a preliminary injunction—the appeal of which is pending separately before this Court, which denied requests to stay the injunction. *See Pernell v. Fla. Bd. of Governors of State Univ.*, No. 22-13992-J, 2023 WL 2543659 (11th Cir. Mar. 16, 2023). The court did not err in its evaluation of the serious nature of the case.

## D. The privilege's purpose is not served by withholding purely factual records.

The district court found that the purpose of legislative privilege weighs against disclosure generally. App. 534. In order to balance the interests of legislative privilege against the important interests in obtaining discovery, the court followed an established path in limiting, but not entirely precluding, discovery from the Legislators, "allowing the production of 'documents containing factually based information used in the decision-making process or disseminated to legislators or

32

committees, such as committee reports and minutes of meetings.'" App. 535 (quoting *League of Women Voters of Fla., Inc.*, 340 F.R.D. at 458); *see also Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *9; *ACORN v. Cnty. of Nassau*, No. CV05-2301, 2007 WL 2815810, at *3 (E.D.N.Y. Sept. 25, 2007). As the court recognized and for the reasons set forth above, this balance is consistent with *Arlington Heights* and reflects both the purpose of legislative privilege and the importance of the federal interests at stake. *Id.* The district court's approach denied Plaintiffs "the overwhelming majority" of the documents they sought, App. 541, but still gave them access to "some of the most relevant evidence" to proving their equal protection claim, App. 535. Here again, the court acted within its discretion and did not commit a clear error in striking the balance.

\* \* \*

The district court followed the precedent of other federal courts in crafting a discovery order that gave broad deference to legislative privilege while permitting discovery of a narrow range of purely factual documents before the legislature at the time the Stope WO.K.E. Act was enacted. The court did not clearly err in this judgment, and its ruling should be affirmed.

## IV.    Purely Factual Information Is Not Covered by Legislative Privilege.

The district court was within its discretion in permitting discovery of "[d]ocuments containing factually based information used in the decision-making

process or disseminated to legislators or committees." App. 542. Moreover, the district court included a highly deferential discovery process ensuring that the order to disclose purely factual information would not reach direct evidence of legislators' motivations. In lieu of a privilege log, the court permitted that "[i]nstead, if a responsive document includes privileged mental impressions or statements evidencing a motivation concerning the formulation of legislation, the Legislator need only redact the privileged statement(s) and produce the responsive document in redacted form." App. 542–43. In light of the important federal interests at stake, the district court's order was highly deferential to the Legislators and clearly within its discretion.

### A. The public interest served by legislative privilege is at its lowest where legislators are not a party to the litigation.

The public interest served by legislative privilege is at its lowest when legislators are not a party to the lawsuit, solely injunctive relief is sought, and the evidence is purely factual in nature. Such requests do not threaten to chill candor in legislative deliberations, the core of the legislative function, in the way that being subject to a suit for damages or compelled to testify may. *See Bethune-Hill*, 114 F. Supp. 3d at 342. Rather, the asserted interest in legislative privilege is an interest in

freedom from the routine burden of responding to discovery because it distracts from the job.[16] Legislators' Br. 16-17.

These routine burdens of discovery are not irrelevant, but they can be managed by the courts to avoid undue interference with the legislative function, as they were in this case, and do not warrant the absolute withholding of purely factual information relevant to the core of a federal constitutional claim. *See In re Grand Jury*, 821 F.2d at 957 (noting that the federal rules "authorize[] a district court to quash or modify a subpoena that is unreasonable or oppressive"). The district court struck an appropriate balance in limiting the burden on Legislators while permitting discovery of limited factual evidence.

The Legislators argue that their own privilege from discovery is unique and more expansive than the privilege afforded to other state and even federal government officials. *See* Legislators' Br. 15–19. The Court need not opine on the full range and scope of government privileges to decide the matter before it. However, there is no reason that state legislators should be held above other

---

[16] The Legislators attempt to argue the burden is especially apparent owing to the particular structure of the Florida Legislature under the state constitution and statutes. Legislators' Br. 18-19. But looking at the Florida system, it is clear that the state did not foresee the need to provide a robust legislative privilege. *See League of Women Voters of Fla. v. Fla. House of Representatives*, 132 So. 3d 135, 143 (Fla. 2013) ("In contrast to the vast majority of states, the Florida Constitution does not include a Speech or Debate Clause and has not included one since the clause was omitted during the 1868 constitutional revision."); Fla. Stat. § 11.0431(1) (permitting inspection of legislative records).

government officials—even the President—in their privilege against the routine burdens discovery places on the performance of their job functions. As the Supreme Court has explained, "in the mine run of cases, where a [government official] is subpoenaed during a proceeding targeting someone else . . . the burden on [that official] will ordinarily be lighter than the burden of defending against a civil suit." *Trump*, 140 S. Ct. at 2426. Indeed, in considering claims that litigation would distract from the President's constitutional duties, the Supreme Court has "expressly rejected immunity based on distraction alone." *Id.*; *see also Clinton v. Jones,* 520 U.S. 681, 702 (1997). Similarly, the Supreme Court in *Gillock* found that while submitting to discovery "may have some minimal impact on the exercise of [ ] legislative function," this was not sufficient reason to grant state legislators absolute privilege. 445 U.S. at 373 (extrapolating from the context of executive privilege).

There is no basis in comity or otherwise to find that state legislators should be afforded a greater shield against distraction than a sitting U.S. president. The district court did not abuse its discretion in concluding that purely factual evidence falls outside the scope of privilege in this context.

**B. Distinguishing purely factual information properly accommodated the purposes of legislative privilege.**

The district court carefully crafted its order to avoid disclosures that might in any way chill the legislative process, and narrowed the discovery of factual information sufficiently to avoid any undue burden in the form of distraction. Its

approach is consistent with other courts in managing privilege within the course of discovery.

In *In re Grand Jury*, the Third Circuit considered a similar claim and adopted a similar approach. In that case, members of the Pennsylvania House of Representatives claimed that legislative privilege shielded them from discovery of committee records. 821 F.2d at 948. The Third Circuit rejected the members' argument. *Id.* Recognizing that an evidentiary privilege should apply only to the extent that it promotes a public good, the Third Circuit held that state legislators' legitimate interests could be protected through "a more narrowly tailored privilege for confidential deliberative communications" and the discretion to quash or modify burdensome subpoenas. *Id.* at 956–58. In defining the breadth of this deliberative communications privilege, the Third Circuit looked to the executive branch's deliberative process privilege. *Id.* at 958–59. The court observed that this "careful tailoring of the privilege . . . achieve[d] its purpose of protecting confidentiality without unduly inhibiting the truth-finding process of litigation." *Id.* at 959 (limiting the privilege "to communications involving opinions, recommendations or advice about legislative decisions").

The distinction of purely factual information is also consistent with the purpose of legislative privilege because purely factual information does not implicate the legislators' individual thought processes or intentions or unduly chill

their attention to legislative duties. Instead, it is information that in many cases is generated by third parties outside of the legislature. *See* App. 542 (requiring disclosure of information "used in the decision-making process or disseminated to legislators"). In this sense, the information is similar to, albeit far narrower than, information pertaining to communications between legislators and third parties that courts have frequently held are not protected by legislative privilege. *See, e.g.*, *Lee v. Va. State Bd. of Elections*, No. 3:15cv357, 2015 WL 9461505, at *7 (E.D. Va. Dec. 23, 2015) (finding that "any communications . . . made with Third Parties . . . are not protected by legislative privilege . . . because the involvement of third parties inherently destroyed any privilege that may or may not have existed"); *ACORN*, 2007 WL 2815810, at *3 ("Although assertion of a legislative privilege may bar inquiry into deliberations, it would not bar inquiry regarding the materials and information available at the time a decision was made."). This follows from *Gillock*'s reasoning, which explained that the privilege should apply to protect the independence of the state legislature by protecting candor in internal exchanges. 445 U.S. at 373 (reasoning by analogy to the executive privilege). The cases cited by the Legislators for the contrary position addressed immunity from suit and did not address evidentiary privileges. *See Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980).

Here, the district court defined the scope of legislative privilege in the same terms as the Third Circuit. *See* App. 528–29. It protected the mental processes of the Legislators while requiring them to turn over purely factual information. A number of other courts have embraced this common-sense approach. *See, e.g.*, *Arlington Heights*, 429 U.S. at 270 n.20; *Doe v. Nebraska*, 788 F. Supp. 2d 975, 984 (D. Neb. 2011) (collecting cases); *Fla. Ass'n of Rehab. Facilities, Inc.*, 164 F.R.D. at 267; *Irvin*, 127 F.R.D. at 171–72.

The wisdom of this approach is that it avoids creating, "without any real necessity, an obstacle to the administration of justice." *In re Dinnan*, 661 F.2d at 429. Plaintiffs are able to access the factual information needed to support their equal protection claim, allowing them to vindicate public rights that impact thousands of faculty and students in Florida's institutions of higher education. And the Legislators are still able to shield from discovery their mental processes during the formulation of the Stop W.O.K.E. Act. By drawing the line at the deliberative process, the district court avoided creating unnecessary barriers to the administration of justice while succeeding in protecting the most important aspects of the legislative process.

## C. The Legislators' arguments that they are absolutely shielded from discovery of factual information are unavailing.

The Legislators cite *In re Hubbard* as establishing a "categorical approach" barring discovery in any circumstances in which evidence of motive is sought. Legislators' Br. at 9. This reading overstates this Court's ruling in *Hubbard*, which

stressed that the Court "address[ed] only the issues . . . before [it]," 803 F.3d at 1312 n.13, and recognized that a case where "[s]ome of the relevant information sought by the subpoenas . . . could have been outside of any asserted privilege" would be wholly different, *id.* at 1311. This is that case.[17]

Similarly, *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011) ("*WSSC*"), cited by the Legislators, Legislators' Br. 10, does not support their position. *WSSC* did not consider the question of the privilege's application to purely factual information in discovery. In fact, while the court in *WSSC* discussed the importance of legislative privilege, it found it premature to invoke the doctrine, and declined to quash the EEOC's investigative subpoenas. *Id.* at 182. The Fourth Circuit's discussion of legislative privilege addressed the concerns relevant when legislators are themselves directly subject to suit or called to testify. *Id.* at 181-182. In contrast, the court rejected the argument that responding to document requests would categorically "require that legislative officials divert their time and attention away from their legislative duties," and permitted the EEOC's document requests to go forward. *Id.* at 182. Thus, the Fourth Circuit in

---

[17] Indeed, as *Hubbard* recognized, because the "sole reason" for the subpoenas in that case "was to probe the subjective motivations of the legislators who supported [the] Act," *id.* at 1310, "[a]ny material, documents, or information that did not go to legislative motive was irrelevant to the retaliation claim," *id.* at 1311. Conversely, in this case, the district court shielded all documents that featured the Legislators' mental processes and only allowed Plaintiffs to discover purely factual information. *See* App. 528–29, 535, 540–42.

*WSSC* found that the mere fact of responding to document requests did not implicate legislative privilege. The district court followed an even narrower approach here.

\* \* \*

The district court followed the reasoning and example of other federal courts in distinguishing purely factual documents in a case raising important federal interests and where the legislators are not themselves the targets of the litigation. The court did not abuse its discretion, and its decision should be upheld.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court affirm the district court's order granting in part and denying in part the Legislators' motion to quash.

Dated:  May 24, 2023

Respectfully submitted,

**AMERICAN CIVIL LIBERTIES FOUNDATION**

*/s/ Leah Watson*
Leah Watson
Emerson Sykes
Sarah Hinger
Laura Moraff
Crystal Pardue
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., Fl. 18
New York, NY 10004
(212) 549-2500
lwatson@aclu.org
esykes@aclu.org

**ACLU FOUNDATION OF FLORIDA**

*/s/ Jerry C. Edwards*
Jerry C. Edwards
ACLU FOUNDATION OF FLORIDA
933 Lee Road, Suite 102
Orlando, FL 32810
(786) 363-1107
jedwards@aclufl.org

Caroline McNamara
Jacqueline Azis
ACLU FOUNDATION OF FLORIDA
4343 W. Flagler Street, Suite 400
Miami, FL 33134

shinger@aclu.org
lmoraff@aclu.org
cpardue@aclu.org

**BALLARD SPAHR, LLP**

*/s/ Jason Leckerman*
Jason Leckerman
BALLARD SPAHR, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
(215) 864-8266
leckermanj@ballardspahr.com

Charles D. Tobin
BALLARD SPAHR, LLP
1909 K St., NW, 12th Fl.
Washington, D.C. 20006
(202) 661-2218
tobinc@ballardspahr.com

Jacqueline Mabatah
BALLARD SPAHR, LLP
201 S. Main St., Ste. 800
Salt Lake City, UT 84111-2221
(801) 531-3063
mabatahj@ballardspahr.com

(786) 363-2700
cmcnamara@aclufl.org
jazis@aclufl.org

**NAACP LEGAL DEFENSE &
EDUCATION FUND**

*/s/ Charles McLaurin*
Charles McLaurin
Jin Hee Lee
Santino Coleman
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street, Suite 600
Washington, D.C. 20005
(202) 682-1300
cmclaurin@naacpldf.org
jlee@naacpldf.org
scoleman@naacpldf.org

Alexsis Johnson
Tiffani Burgess
NAACP LEGAL DEFENSE
AND EDUCATION FUND, INC.
40 Rector Street, Fl. 5
New York, NY 10006
(212) 217-1690
amjohnson@naacpldf.org
tburgess@naacpldf.org

*Counsel for Plaintiffs-Appellees*

## **CERTIFICATE OF COMPLIANCE**

On behalf of Plaintiffs-Appellees, I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g)(1) that the attached brief is proportionally spaced, has a typeface of 14 points, and contains 10,881 words.

Dated:  May 24, 2023                    */s/ Jerry C. Edwards*
                                        Jerry C. Edwards

## **CERTIFICATE OF SERVICE**

I, Jerry C. Edwards, counsel for Plaintiffs-Appellees and a member of the Bar of this Court, certify that on May 24, 2023, a copy of the foregoing was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

                                        */s/ Jerry C. Edwards*
                                        Jerry C. Edwards