# In the United States Court of Appeals for the Eleventh Circuit

No. 23-10616

LEROY PERNELL, ET AL.,

*Plaintiffs-Appellees,*

v.

ROBERT ANDRADE, ET AL.,

*Movants-Appellants.*

## REPLY BRIEF OF MOVANTS-APPELLANTS

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
CASE NO. 4:22-CV-304-MW-MAF

DAVID AXELMAN
  *General Counsel*
THE FLORIDA HOUSE OF REPRESENTATIVES
317 The Capitol
Tallahassee, FL 32399
(850) 717-5500
*david.axelman@myfloridahouse.gov*

ASHLEY MOODY
  *Attorney General*
HENRY C. WHITAKER
  *Solicitor General*
DANIEL W. BELL
  *Chief Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF FLORIDA
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
*daniel.bell@myfloridalegal.com*

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Movants-Appellants certify that the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1.    Almond, Russell, *Plaintiff-Appellee*

2.    Altizer, Tiffany, *Defendant*

3.    Alvarez, Cesar L., *Defendant*

4.    Alvarez, Maximo, *Defendant*

5.    American Civil Liberties Union of Florida, *Counsel for Plaintiffs-Appellees*

6.    American Civil Liberties Union, *Counsel for Plaintiffs-Appellees*

7.    Andrade, Robert, *Movant-Appellant*

8.    Armas, Jose J., *Defendant*

9.    Austin, Sharon Wright, *Plaintiff-Appellee*

10.    Axelman, David, *Counsel for Movants-Appellants*

11.    Azis, Jacqueline Nicole, *Counsel for Plaintiffs-Appellees*

12.    Ballard, Kathryn, *Defendant*

13.    Ballard Spahr LLP, *Counsel for Plaintiffs-Appellees*

14.    Bell, Daniel, *Counsel for Movants-Appellants*

15.    Bell, Melony*, Movant-Appellant*

16.    Bell, Zachary Chandler, *Defendant*

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

17.   Blakenship, Katherine, *Counsel for Plaintiffs-Appellees*

18.   Boaz, Timothy, *Defendant*

19.   Borrero, David, *Movant-Appellant*

20.   Brandon, David L., *Defendant*

21.   Butchey, Deanne, *Defendant*

22.   Callahan, Sandra, *Defendant*

23.   Carrere, Michael, *Defendant*

24.   Cavazos, Ann Marie, *Defendant*

25.   Cerio, Timothy, *Defendant*

26.   Chicken, Eric, *Defendant*

27.   Christy, Bill, *Defendant*

28.   Cliatt, II, Otis, *Defendant*

29.   Cole, Richard P., *Defendant*

30.   Coleman, Santino, *Counsel for Plaintiffs-Appellees*

31.   Collins, Peter, *Defendant*

32.   Colson, Dean S., *Defendant*

33.   Condello, Jeff, *Defendant*

34.   Conte, Joseph, *Defendant*

35.   Cooper & Kirk, PLLC, *Counsel for Defendants*

36.   Cooper, Charles J., *Counsel for Defendants*

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

37. Corcoran, Richard, *Defendant*

38. Corr, Christopher T., *Defendant*

39. Dauphin, Johana, *Plaintiff-Appellee*

40. De Las Cuevas-Diaz, Vivian, *Defendant*

41. Diaz, Jr., Manny, *Defendant*

42. Donnelly, N. Rogan, *Defendant*

43. Dorsey, Dana, Thompson, *Plaintiff-Appellee*

44. Dortch, Jr., Thomas W., *Defendant*

45. Duart, Carlos A., *Defendant*

46. Dubose, Michael, *Defendant*

47. Dunn, Marvin, *Plaintiff-Appellee*

48. Edge, Aubrey, *Defendant*

49. Edinger, Gary, *Counsel for Plaintiffs-Appellees* in *Novoa v. Diaz*, No. 22-13994

50. Edwards, Jerry Crawford, *Counsel for Plaintiffs-Appellees*

51. Ezray, Evan, *Counsel for Movants-Appellants*

52. Fajana, Morenike, *Counsel for Plaintiffs-Appellees*

53. Fernandez-Barquin, Juan, *Movant-Appellant*

54. Fine, Randy, *Movant-Appellant*

55. First Amendment Forum at University of South Florida, *Plaintiff-Appellee* in *Novoa v. Diaz*, No. 22-13994

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

56.  Fitzpatrick, Magistrate Judge Martin A., U.S. District Court for the Northern District of Florida

57.  Florida A&M University Board of Trustees, *Defendant (Dismissed on Nov. 22, 2022)*

58.  Florida Board of Governors of the State University System, *Defendant (Dismissed on Nov. 22, 2022)*

59.  Florida International University Board of Trustees, *Defendant (Dismissed on Nov. 22, 2022)*

60.  Florida Office of the Attorney General, *Counsel for Movants-Appellants*

61.  Florida State Board of Trustees, *Defendant (Dismissed on Nov. 22, 2022)*

62.  Foundation for Individual Rights and Expression, *Counsel for Plaintiffs-Appellees* in *Novoa v. Diaz*, No. 22-13994

63.  Frost, Patricia, *Defendant*

64.  Gabadage, Nimna, *Defendant*

65.  Gaekwad, Danny, *Defendant*

66.  Gary S. Edinger & Associates PA – Gainesville FL, *Counsel for Plaintiffs-Appellees* in *Novoa v. Diaz*, No. 22-13994

67.  Gonzalez, Jorge, *Defendant*

68.  Greubel, Greg, *Counsel for Plaintiffs-Appellees* in *Novoa v. Diaz*, No. 22-13994

69.  Griffin, Michael, *Defendant*

70.  Haddock, Edward, *Defendant*

71.  Harper, Kristin, *Defendant*

72.  Heavener, James W., *Defendant*

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

73.   Henderson, Jim W., *Defendant*

74.   Hinger, Sarah Ann, *Counsel for Plaintiffs-Appellees*

75.   Hosseini, Morteza, *Defendant*

76.   Horton, Oscar, *Defendant*

77.   Johnson, Alexsis Marie, *Counsel for Plaintiffs-Appellees*

78.   Jones, Ken, *Defendant*

79.   Jordan, Darlene Luccio, *Defendant*

80.   King, Stephen, *Defendant*

81.   Kuntz, Thomas G., *Defendant*

82.   Lamb, Brian, *Defendant*

83.   Lawson, Kevin, *Defendant*

84.   Leckerman, Jason Allen, *Counsel for Plaintiffs-Appellees*

85.   Lee, Jin Hee, *Counsel for Plaintiffs-Appellees*

86.   Leftheris, Julie, *Defendant*

87.   Lemasters, Lauren D., *Defendant*

88.   Levine, Alan, *Defendant*

89.   Lopez, Daniella, *Defendant*

90.   Lowell, Natasha, *Defendant*

91.   Lubin, Catharine, *Counsel for Plaintiffs-Appellees*

92.   Lugo, Cristhofer, *Defendant*

93.    Lydecker, Charles, *Defendant*

94.    Mabatah, Isiuwa Jacqueline, *Counsel for Plaintiffs-Appellees*

95.    Maggard, Randall Scott, *Movant-Appellant*

96.    Maida, Michael, *Counsel for Movants-Appellants*

97.    Martins, Alex, *Defendant*

98.    Massullo, Ralph, *Movant-Appellant*

99.    Mateer, Craig, *Defendant*

100.    McAlpin, Caryl, *Defendant*

101.    McClain, Stan, *Movant-Appellant*

102.    McLaurin, Charles, *Counsel for Plaintiffs-Appellees*

103.    McNamara, Caroline A., *Counsel for Plaintiffs-Appellees*

104.    Michael, Deanna, *Defendant*

105.    Miklos, John, *Defendant*

106.    Mills, Harold, *Defendant*

107.    Monbarren, Lauran, *Defendant*

108.    Moore, Kimberly, *Defendant*

109.    Moraff, Laura Beth, *Counsel for Plaintiffs-Appellees*

110.    Morris, Joshua, *Counsel for Plaintiffs-Appellees* in in *Novoa v. Diaz*, No. 22-13994

111.    NAACP Legal Defense & Educational Fund, *Counsel for Plaintiffs-Appellees*

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

112.  Nascimento, Isabella Salomao, *Counsel for Plaintiffs-Appellees*

113.  Novoa, Adriana, *Plaintiff-Appellee* in in *Novoa v. Diaz*, No. 22-13994

114.  Oberdorf, Tobin Rogers, *Movant-Appellant*

115.  Occhipinti, Anna, *Counsel for Plaintiffs-Appellees*

116.  Ohlendorf, John David, *Counsel for Defendants*

117.  Okaty, Michael, *Defendant*

118.  O'Keefe, Daniel T., *Defendant*

119.  Palyam, Nithin, *Defendant*

120.  Park, Shelley, *Plaintiff-Appellee*

121.  Patel, Rahul, *Defendant*

122.  Patel, Shilen, *Defendant*

123.  Payne, Bobby, *Movant-Appellant*

124.  Pernell, LeRoy, *Plaintiff-Appellee*

125.  Perry, Belvin, Jr., *Defendant*

126.  Phalin, Amanda J., *Defendant*

127.  Piccolo, Fredrick, *Defendant*

128.  Powers, Marsha D., *Defendant*

129.  Prescott, T. Gene, *Defendant*

130.  Ramer, John, *Counsel for Defendants*

131.  Rechek, Samuel, *Plaintiff-Appellee* in in *Novoa v. Diaz*, No. 22-13994

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

132.  Reed, Craig, *Defendant*

133.  Ridley, Fred S., *Defendant*

134.  Roth, Justin, *Defendant*

135.  Roth, Rick, *Movant-Appellant*

136.  Rowe, Chanel T., *Defendant*

137.  Sandoval, Jennifer, *Plaintiff-Appellee*

138.  Sargeant, Deborah, *Defendant*

139.  Sarnoff, Marc D., *Defendant*

140.  Sasser, Bob, *Defendant*

141.  Schneider, Jenifer, *Defendant*

142.  Scott, Steven, *Defendant*

143.  Seay, Beverly J., *Defendant*

144.  Seixas, Melissa, *Defendant*

145.  Self, William, *Defendant (Dismissed on Nov. 17, 2022)*

146.  Shoaf, Jason, *Movant-Appellant*

147.  Silagy, Eric, *Defendant*

148.  Sirois, Tyler, *Movant-Appellant*

149.  Steinbaugh, Adam, *Counsel for Plaintiffs-Appellees* in in *Novoa v. Diaz*, No. 22-13994

150.  Stermon, Kent, *Defendant*

151. Stone, Kenward, *Defendant*

152. Sykes, Emerson James, *Counsel for Plaintiffs-Appellees*

153. Thiel, John, *Defendant*

154. Tilley, Daniel Boaz, *Counsel for Plaintiffs-Appellees*

155. Tobin, Charles David, *Counsel for Plaintiffs-Appellees*

156. Tovar, Rogelio, *Defendant*

157. Truenow, Keith, *Movant-Appellant*

158. Trujillo, Carlos, *Defendant*

159. University of Central Florida Board of Trustees, *Defendant (Dismissed on Nov. 22, 2022)*

160. University of Florida Board of Trustees, *Defendant (Dismissed on Nov. 22, 2022)*

161. University of South Florida Board of Trustees, *Defendant (Dismissed on Nov. 22, 2022)*

162. Walker, Judge Mark E., U.S. District Court for the Northern District of Florida

163. Washington, Nicole, *Defendant*

164. Watson, Leah Monique, *Counsel for Plaintiffs-Appellees*

165. Weatherford, Drew, *Defendant*

166. Weatherford, William, *Defendant*

167. Whitaker, Henry, *Counsel for Movants-Appellants*

168. Wold, Megan M., *Counsel for Defendants*

*LeRoy Pernell et al., v. Robert Andrade, et al., No. 23-10616*

169.   Zucker, Anita G., *Defendant*

## CORPORATE DISCLOSURE STATEMENT

Not applicable.

Dated: June 26, 2023

*/s/ Daniel W. Bell*
Daniel W. Bell

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................ii

INTRODUCTION...................................................................... 1

ARGUMENT ........................................................................ 1

   I.   Because The Subpoenas' Sole Purpose Was to Explore Legislative Motive, They Should Have Been Quashed in Their Entirety................................. 1

   II.  In Section 1983 Cases, State Lawmakers Are Absolutely Immune from Compulsory Evidentiary Process ............................................. 7

        A.   Precedent Establishes Absolute Legislative Immunity from Compulsory Evidentiary Process in Section 1983 Cases.................................... 7

        B.   Plaintiffs' Other Arguments for Qualifying the Privilege Are Unpersuasive................................................................ 18

CONCLUSION ...................................................................... 23

CERTIFICATE OF COMPLIANCE ....................................................... 24

CERTIFICATE OF SERVICE ........................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Almonte v. City of Long Beach,*
   478 F.3d 100 (2d Cir. 2007) ..................................................................... 6

*Am. Trucking Ass'ns, Inc. v. Alviti,*
   14 F.4th 76 (1st Cir. 2021) ...................................................................... 17

*Bogan v. Scott-Harris,*
   523 U.S. 44 (1998) ............................................................................ 8, 20, 21

*Brown & Williamson Tobacco Corp. v. Williams,*
   62 F.3d 408 (D.C. Cir. 1995) .................................................................. 14

*Bruce v. Riddle,*
   631 F.2d 272 (4th Cir. 1980) ................................................................... 6

*Burtnick v. McLean,*
   76 F.3d 611 (4th Cir. 1996) ................................................................... 14

*Clinton v. Jones,*
   520 U.S. 681 (1997) .............................................................................. 20

*Coffin v. Coffin,*
   4 Mass. 1 (1808) ................................................................................... 18

*Dennis v. Sparks,*
   449 U.S. 24 (1980) ....................................................................... Passim*

*Dombrowski v. Eastland,*
   387 U.S. 82 (1967) (per curiam) ........................................................... 16

*Eastland v. U.S. Servicemen's Fund,*
   421 U.S. 491 (1975) ......................................................................... 16, 19

*EEOC v. Wash. Suburban Sanitary Comm'n,*
   631 F.3d 174 (4th Cir. 2011) ............................................................. 5, 14

*Gravel v. United States,*
   408 U.S. 606 (1972) .............................................................................. 10

*In re Grand Jury,*
   821 F.2d 946 (3d Cir. 1987) ............................................................. 17, 18

*In re Hubbard,*
   803 F.3d 1298 (11th Cir. 2015) ........................................................ Passim*

*In re N. Dakota Legis. Assembly,*
   No. 23-1600, 2023 WL 3831550 (8th Cir. June 6, 2023) .................. 6, 14, 16

*Jefferson Community Health Care Ctrs., Inc. v. Jefferson Par. Gov't,*
   849 F.3d 615 (5th Cir. 2017) ................................................................. 15

*La Union Del Pueblo Entero v. Abbott,*
   68 F.4th 228 (5th Cir. 2023) ........................................................ 14, 15, 16

*Lake Country Estates, Inc. v. Tahoe Reg'l Plan. Agency*,
440 U.S. 391 (1979) ............................................................................ 21, 22

*League of Women Voters of Fla., Inc. v. Lee*,
340 F.R.D. 446 (N.D. Fla. 2021) ................................................................ 5

*League of Women Voters v. Fla. House of Representatives*,
132 So. 3d 135 (Fla. 2013) ....................................................................... 21

*Lee v. City of L.A.*,
908 F.3d 1175 (9th Cir. 2018) .................................................................. 17

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
844 F.2d 856 (D.C. Cir. 1988) ................................................................. 13

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .................................................................................. 18

*Reeder v. Madigan*,
780 F.3d 799 (7th Cir. 2015) .................................................................... 16

*Scott v. Taylor*,
405 F.3d 1251 (11th Cir. 2005) ................................................................ 13

*Spallone v. United States*,
493 U.S. 265 (1990) ................................................................................... 8

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*,
446 U.S. 719 (1980) ............................................................ 10, 11, 15, 19*

*Tenney v. Brandhove*,
341 U.S. 367 (1951) ........................................................................ Passim*

*Trump v. Vance*,
140 S. Ct. 2412 (2020) .............................................................................. 20

*United States v. Gillock*,
445 U.S. 360 (1980) ....................................................................... Passim*

*United States v. Singleton*,
260 F.3d 1295 (11th Cir. 2001) ................................................................ 18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ............................................................................ 11, 17

**Statutes**

Fla. Const. art. I, § 24 ................................................................................. 22
Fla. Stat. § 11.0431 .................................................................................... 21

## INTRODUCTION

Plaintiffs subpoenaed fourteen members of the Florida Legislature ("the Members") seeking to probe their motives in exercising their sovereign power to enact legislation. That is exactly what the doctrine of legislative privilege is designed to prevent, yet the district court allowed Plaintiffs to proceed. That was doubly wrong because the legislative privilege enjoyed by state lawmakers is absolute in Section 1983 cases, *see United States v. Gillock*, 445 U.S. 360, 371–72 (1980), and because "[n]one of the relevant information sought in this case could have been outside of the legislative privilege," *In re Hubbard*, 803 F.3d 1298, 1311 (11th Cir. 2015). Plaintiffs' defense of the district court's contrary decision offers no persuasive basis to set aside the privilege, which the Supreme Court has declared "indispensably necessary" in that it "support[s] the rights of the people, by enabling their representatives to execute the functions of their office." *Tenney v. Brandhove*, 341 U.S. 367, 373–74 (1951). This Court should reverse and remand with instructions to quash the subpoenas in their entirety.

## ARGUMENT

### I. BECAUSE THE SUBPOENAS' SOLE PURPOSE WAS TO EXPLORE LEGISLATIVE MOTIVE, THEY SHOULD HAVE BEEN QUASHED IN THEIR ENTIRETY.

**1.** The district court ordered the Members to produce "purely factual documents, including bill drafts, bill analyses, white papers, studies, and news reports provided by or to the Legislators and their staff members" because they "do not fall within the scope

1

of" the legislative privilege. App. 528. In other words, the court held the privilege simply inapplicable to those documents.

Plaintiffs defend that approach as allowing the Members to withhold "direct evidence of [their] motivations," meaning documents that include "mental impressions or statements evidencing a motivation concerning the formulation of legislation." Ans. Br. 33–34. But this Court's precedent draws no distinction between "direct" and "indirect" evidence of motive and instead holds that subpoenas directed at legislators must be quashed entirely where, as here, their "only purpose [is] to support the lawsuit's inquiry into the motivation behind" the challenged law. *In re Hubbard*, 803 F.3d 1298, 1310–11 (11th Cir. 2015).

As this Court explained in *Hubbard*, legislative privilege bars a particular type of *inquiry*—"inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" 803 F.3d at 1310 (emphasis omitted) (citation omitted). It is the "claim" that "defines the purpose of the subpoenas, which in turn answers the question of whether the privilege applies." *Id.* at 1311 n.12. The "factual" nature of certain documents has no bearing on that analysis. Because in *Hubbard* "[t]he subpoenas' only purpose was to support the lawsuit's inquiry into the motivation behind" the challenged law, the court quashed the subpoenas entirely. *Id.* at 1310. Put differently, the court rejected a document-by-document approach because, given the subpoenas' purpose, "[n]one of the relevant information sought in this case could have been outside of the legislative privilege." *Id.* at 1311.

2

Plaintiffs respond that *Hubbard* admits of a different approach in a case where "[s]ome of the relevant information sought by the subpoenas . . . could have been outside of any asserted privilege." Ans. Br. 39–40 (citing *Hubbard*, 803 F.3d at 1311). *Hubbard* certainly leaves open that possibility, but in *this* case, the sole purpose of Plaintiffs' subpoenas was to probe legislative motive—specifically, "whether race was a motivating factor in the enactment of the challenged law," Ans. Br. 5–6, so all of the requested information is squarely within the scope of the privilege. As in *Hubbard*, the "factual heart" of Plaintiffs' claim "and the scope of the legislative privilege were one and the same: the subjective motivations of those acting in a legislative capacity." 803 F.3d at 1311.

Consider the documents Plaintiffs demand here. What Plaintiffs and the district court characterize as "purely factual documents" outside the scope of the privilege would include "white papers, "bill drafts," and "bill analyses." App. 528. But such documents are written reflections of the "motivations and mental impressions" of legislators and their staff. Even to the extent Plaintiffs seek drafts generated by outsiders and merely shared with legislators, Plaintiffs want those documents not because of their "purely factual" content, *id.*, but because legislators reviewed or contributed to the materials, making them (theoretically) probative of legislative motive. That is no less true even of the "studies" and "news reports" that Plaintiffs seek. "[F]actual" or not, Plaintiffs admit they want such documents because they may be "[c]ircumstantial

evidence of intent" if they show "awareness of a disparate impact" or "the availability of less discriminatory alternatives." Ans. Br. 30.

Under *Hubbard*, the district court should have quashed the subpoenas entirely, even as to the documents it characterized as "purely factual."

**2.** Plaintiffs are just as wrong to suggest that their subpoenas should proceed because they "do not threaten to chill candor in legislative deliberations." Ans. Br. 34. For one thing, Plaintiffs are wrong on the facts. Under the district court's order, responsive communications must be produced unless, on their face, they "contain . . . mental impressions, opinions, or commentary regarding the legislation." App. 529; *see id.* at 539 (ordering the Members to "produce responsive documents containing both factually based information . . . and privileged mental impressions or statements regarding motivations concerning HB 7" but allowing the Members to "redact the privileged information"). The subpoenas thus remain broad enough to sweep up documents that reflect confidential "legislative deliberations"—for example, a series of bill drafts exchanged between members and their staff. By failing to protect core deliberative communications, the district court's approach indeed threatens to "chill candor in legislative deliberations." Ans. Br. 34.

Plaintiffs are incorrect in any event to suggest the privilege applies with full force only to "confidential deliberative communications." Ans. Br. 37 (citation omitted). As this Court has explained, the privilege "protects the legislative process itself, and therefore covers" all actions "in the sphere of legitimate legislative activity"—that is, all

"actions in the proposal, formulation, and passage of legislation." *Hubbard*, 803 F.3d at 1308 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). As even the court below has recognized, unlike other privileges, "the maintenance of confidentiality is not the fundamental concern of the legislative privilege." *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446, 454 (N.D. Fla. 2021) (citation omitted). Confidential legislative deliberations may well be especially deserving of protection, but the privilege serves a broader purpose in that it shields lawmakers from "distractions" in carrying out their legislative duties. *Tenney*, 341 U.S. at 377. The privilege shields legislators from the "intrusive" distraction of "discovery requests" because "complying with such requests detracts from the performance of official duties." *Hubbard*, 803 F.3d at 1310 (citation omitted). And the privilege serves that purpose whenever it avoids "the distractions of compulsory process," *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011), regardless of the specific documents at issue.

This Court's approach to the privilege in *Hubbard* refutes Plaintiffs' suggestion that the privilege applies with less force to legislative records other than "confidential deliberative communications." Ans. Br. 37 (citation omitted). The subpoenas there "sought production of . . . [a]ll communications" regarding the challenged legislation. *Hubbard*, 803 F.3d at 1303 & n.4. This Court nonetheless did not distinguish between confidential records, on the one hand, and communications that had been revealed to the press or the public at-large, on the other. Instead, the Court held that the district court had abused its discretion in requiring a privilege log at all, because "the nature of"

the "legal claim, and the sole purpose of the subpoena in light of that claim" provided "more than enough under Rule 45 to assess the claim of privilege and to compel the granting of the motions to quash." *Id.* at 1309. Plaintiffs' document-specific conception of the privilege squarely conflicts with *Hubbard*.

The Second and Fourth Circuits, too, have long made clear that the purpose of the privilege is not limited to the protection of confidential communications, holding even that it protects "party caucuses" and "[m]eeting[s] with persons outside the legislature." *Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *see also Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980) (same). The Eighth Circuit recently joined them, explaining that "[t]he legislative privilege . . . is not limited to a bar on inquiry into communications among legislators or between legislators and their aides." *In re N. Dakota Legis. Assembly*, No. 23-1600, 2023 WL 3831550, at *2 (8th Cir. June 6, 2023). "The privilege is not designed merely to protect the confidentiality of deliberations within a legislative body; it protects the functioning of the legislature more broadly." *Id.* "Communications with constituents, advocacy groups, and others outside the legislature are a legitimate aspect of legislative activity." *Id.* Accordingly, "[t]he use of compulsory evidentiary process against legislators and their aides to gather evidence about this legislative activity is . . . barred by the legislative privilege." *Id.*

6

## II.    IN SECTION 1983 CASES, STATE LAWMAKERS ARE ABSOLUTELY IMMUNE FROM COMPULSORY EVIDENTIARY PROCESS.

Plaintiffs do not dispute that the legislative privilege enjoyed by state lawmakers renders them absolutely immune to suit in Section 1983 actions premised on their legislative activities. Plaintiffs instead contend that the privilege affords legislators less protection against another form of interference—compulsory evidentiary process. Precedent overwhelmingly refutes that purported distinction.

### A. Precedent Establishes Absolute Legislative Immunity from Compulsory Evidentiary Process in Section 1983 Cases.

**1.** As explained in the Members' Initial Brief, the Supreme Court held in *Tenney v. Brandhove* that state lawmakers enjoy as a matter of common law tradition the same absolute legislative privilege that members of Congress enjoy under the Speech or Debate Clause—that "'for any Speech or Debate'" in the course of their legislative duties, they "'shall not be questioned in any other Place.'" 341 U.S. at 372–73 (citing U.S. Const. art. I, § 6); *see* Init. Br. 12–13. The plaintiff in *Tenney* made the same argument Plaintiffs advance here—that "claims, including equal protection claims, that turn on evidence of intent necessitate qualified application of legislative privilege." Ans. Br. 21. The Court rejected that argument, holding that "[t]he claim of an unworthy purpose does not destroy the privilege," as that would render the privilege "of little value" when it is most needed. *Id.* at 377.

Plaintiffs do not meaningfully grapple with *Tenney*. They glancingly dismiss the decision as irrelevant because, in their view, it was about "legislators' immunity from

suit," not "immunity from discovery in civil cases." Ans. Br. 18. But *Tenney* recognized a broader protection for legislative activity—that consistent with "the tradition of legislative freedom achieved in England by Civil War and carefully preserved . . . here," state lawmakers "are immune from deterrents to the uninhibited discharge of their legislative duty." 341 U.S. at 376–77. True enough, the named defendants in *Tenney* were legislators and that was the "deterrent" directly at issue. But nothing in *Tenney* supports Plaintiffs' contention that state lawmakers enjoy absolute privilege against just *some* "deterrents to the uninhibited discharge of . . . legislative dut[ies]" and only a qualified privilege with respect to other deterrents. Moreover, since *Tenney*, the Supreme Court has repeatedly affirmed state lawmakers' absolute privilege against "judicial interference," explaining that "'*any* restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998) (citing *Spallone v. United States*, 493 U.S. 265, 279 (1990)) (emphasis added).

Plaintiffs nevertheless ask this Court to approve judicial interference in the form of subpoenas for privileged evidence because *United States v. Gillock* purportedly "f[inds] legislators' testimonial privilege to be qualified notwithstanding their immunity from prosecution." Ans. Br. 18 (citing *United States v. Gillock*, 445 U.S. 360, 370 (1980)). To the contrary, *Gillock* says not a word about "testimonial privilege" and therefore offers no support for Plaintiffs' argument that the privilege is less qualified in that context. Gillock was a state senator charged with violating federal bribery laws, and the

government sought to introduce evidence of his corrupt legislative acts from a variety of sources—including evidence that was publicly available, such as a letter from the governor to the senate and "statements made by Gillock on the floor of the senate." *Gillock*, 445 U.S. at 365. Gillock did not assert a testimonial privilege or in any other way object to any compulsory evidentiary process. He "moved to suppress all evidence relating to his legislative activities," regardless of its source. *Id.* at 362. The district court granted the motion, and the government appealed because the suppression order functionally "immunize[d] criminal conduct proscribed by an Act of Congress." *Id.* at 372 (emphasis omitted) (citation omitted). *Gillock* thus offers no support for Plaintiffs' proposal to afford legislative activity less protection from coercive discovery than it has from coercive lawsuits.

Like the district court, Plaintiffs are wrong to urge that the privilege is qualified here based on *Gillock*'s statement that the privilege may yield "where important federal interests are at stake," as in the enforcement of federal criminal statutes. Ans. Br. 14 (citing *Gillock*, 445 U.S. at 373). That statement simply acknowledges what "the Supremacy Clause dictates"—"that federal enactments will prevail over competing state exercises of power." *Gillock*, 445 U.S. at 370. The privilege yielded in *Gillock* because it could not be honored without effectively vitiating the statute under which the government brought its case. In *Tenney*, though, the Supreme Court held that the opposite was true in Section 1983 cases because the privilege "survived the enactment of" that statute. *See Gillock*, 445 U.S. at 372–73 (discussing *Tenney*). And this case, of

course, is a Section 1983 suit. The privilege therefore applies with full force here, just as it did in *Tenney*.

In sum, the difference between *Gillock* and *Tenney* is not (as Plaintiffs would have it) that legislators' "immunity from discovery" is in some sense weaker than their absolute "immunity from suit." *See* Ans. Br. 18. *Gillock* did not "draw[] the line" for absolute privilege "at the deliberative process." Ans. Br. 39. It "dr[ew] the line at civil actions." *Gillock*, 445 U.S. at 372–73 (footnote omitted); *see also Hubbard*, 893 F.3d at 1312.

The Supreme Court confirmed that distinction just a few months after *Gillock* was decided, explaining that while the Supremacy Clause "justifies a broader privilege for Congressmen than for state legislators in criminal actions, we generally have equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 733 (1980) (citing *Gillock*, 445 U.S. at 360). And in another decision later the same year, the Court applied the principle to immunity from compulsory evidentiary process, explaining that "state legislative immunity for purposes of § 1983 has been patterned after immunity under the Speech or Debate Clause," and that "Members of Congress need not respond to questions about their legislative acts." *Dennis v. Sparks*, 449 U.S. 24, 30 (1980) (citing *Gravel v. United States*, 408 U.S. 606, 616–17 (1972), *and Sup. Ct. of Va.*, 446 U.S. at 732–34); *see also Gravel*, 408 U.S. at 624 n.14 (explaining that "the Speech or Debate Clause[] is absolute").

10

In sum, while the Supreme Court has held that the privilege enjoyed by state lawmakers may be overcome by competing federal enactments, especially in criminal cases, *see Gillock*, 445 U.S. at 372–73, the Court has otherwise held that the privilege is the same as "that accorded Congressmen under the Constitution," *Sup. Ct. of Va.*, 446 U.S. at 733, and is therefore "absolute," *Gillock*, 445 U.S. at 372–73 (discussing *Tenney*). That includes immunity from "respond[ing] to questions about their legislative acts." *Dennis*, 449 U.S. at 30.

Plaintiffs attach considerable significance to dicta from *Arlington Heights* referring to hypothetical "extraordinary instances" in which "the members [of a governmental body] might be called to the stand," *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *see* Ans. Br. 10, but the statement cannot bear the weight Plaintiffs would place on it. There was no question about legislative privilege in *Arlington Heights*, as the plaintiffs had "repeated[ly] insiste[d]" before the district court "that it was effect and not motivation which would make out a constitutional violation." *Id.* at 270 n.20. The Court's statement about "extraordinary instances" accords with the generally absolute character of legislative privilege, which can nonetheless be overcome if, for example, a legislator waives the privilege, or if Congress abrogates the privilege, as it did in *Gillock*. That is no doubt why the Court appended to the statement the caution that "even then such testimony frequently will be barred by privilege," citing *Tenney*, an absolute-privilege case. *Id.* at 268; *see* Init. Br. 25–27.

11

**2.** Plaintiffs point to this Court's decision in *Hubbard* as an instance in which "[t]his Court could have ruled" that state legislators "ha[ve] an absolute immunity from discovery requests in § 1983 cases" but instead "spent considerable time analyzing whether the case presented an important federal interest." Ans. Br. 25 n.14 (citing *Hubbard*, 803 F.3d at 1311–15). From that, Plaintiffs somehow come to the view that "[t]his Court's precedent requires a context specific analysis of legislative privilege and the important federal interests at stake." Ans. Br. 24. That misreads *Hubbard*, which as Plaintiffs acknowledge, did not need to reach the question of whether the privilege was absolute. Ans. Br. 25 (citing *Hubbard*, 803 F.3d at 1312 n.13). Because the plaintiffs had "not presented a cognizable" claim, there could be no basis "to justify intruding upon the" privilege, so the court left for another day the question of whether the privilege might be overcome in a different case. *Hubbard*, 803 F.3d at 1313.

Plaintiffs are indeed correct that *Hubbard* presages an answer to that question, but they have it backwards—the decision strongly suggests that the privilege is absolute in Section 1983 cases. Explaining the privilege's "importan[ce]" and "deep roots in the federal common law," this Court adopted its framework for the privilege from the Supreme Court's absolute-immunity cases. *See Hubbard*, 803 F.3d at 1307–08, 1310. And adopting the underlying reasoning of two federal appellate courts that had recognized lawmakers' absolute immunity from compulsory evidentiary process, the court held that "[t]he privilege applies with *full force* against requests for information about the motives for legislative votes and legislative enactments" because "[d]iscovery procedures can

12

prove just as intrusive" as "nam[ing] members or their staffs as parties to a suit." *Id.* at 1310 (citing *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988), *and Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181) (emphasis added). The court also emphasized the "fundamental difference[s] between civil actions by private plaintiffs and criminal prosecutions by the federal government," and that the Supreme Court "ha[d] drawn the line at civil actions." *Id.* at 1311–12 (citing *Gillock*, 445 U.S. at 372–73).

Plaintiffs' misconception of legislative privilege is underscored by their further suggestion that the privilege is concerned predominately with the "personal liability" of lawmakers, such as in "a suit for damages," and that the "routine" "burden of responding to discovery requests" is insufficient to justify an absolute privilege. Ans. Br. 13, 34–35. This Court rejected that view in *Scott v. Taylor*, which holds that state lawmakers are absolutely immune from suit "regardless of the capacity in which [they are] sued" because "a private civil action, whether for an injunction or damages, creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks. . . ." 405 F.3d 1251, 1254–56 & n.4 (11th Cir. 2005). That logic applies with equal force to nonparty subpoenas, which—like official-capacity claims for injunctive relief—subject lawmakers to no risk of personal liability but entail the distractions of compelled discovery and other potential participation in a lawsuit. If absolute immunity shields the one, it should certainly shield the other, especially since

13

this Court recognized in *Hubbard* that "[d]iscovery procedures can prove just as intrusive" as "nam[ing] members or their staffs as parties to a suit." 803 F.3d at 1310.

**3.** The case for absolute legislative immunity from compulsory evidentiary process in Section 1983 cases has only strengthened since this Court decided *Hubbard*. As discussed above, *Hubbard* adopts the reasoning of two federal appellate courts—the Fourth and D.C. Circuits—that had by then "clarif[ied] . . . that, in civil cases, 'the legislative privilege is 'absolute' where it applies at all,'" including in response to nonparty subpoenas. Init. Br. 13 (citing *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995), *and Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996)). Since then, the Fifth and Eighth Circuits have reached the same conclusion. *See La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 239–40 (5th Cir. 2023); *In re N. Dakota Legis. Assembly*, No. 23-1600, 2023 WL 3831550, at *1 (8th Cir. June 6, 2023).

Plaintiffs wave away as mere dicta the Fourth Circuit's conclusion that state lawmakers enjoy "[a]bsolute immunity" from "compulsory evidentiary process," *EEOC*, 631 F.3d at 181 (citing *Burtnick,* 76 F.3d at 613), because the court separately concluded that the subpoenas at issue sought only non-privileged material. Ans. Br. 40-41. But this Court has already approved of key aspects of the Fourth Circuit's well-reasoned opinion, agreeing that "the privilege extends to discovery requests, even when the lawmaker is not a named party in the suit" because "discovery requests can prove just as intrusive." *Hubbard*, 803 F.3d at 1310 (citing *EEOC*, 631 F.3d at 181).

In much the same vein, Plaintiffs contend that the D.C. Circuit's absolute-privilege cases are irrelevant because they "addressed the privilege of federal lawmakers under the Speech or Debate Clause," not the common-law privilege enjoyed by state lawmakers. Ans. Br. 26. This Court disagrees, having found those cases perfectly relevant in *Hubbard*. Plaintiffs' argument is also inconsistent with the Supreme Court's decisions "equat[ing] the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." *Sup. Ct. of Va.*, 446 U.S. at 733 (citations omitted); *Dennis*, 449 U.S. at 30; *see also* Init. Br. 19–20.

Plaintiffs trumpet the Fifth Circuit's decision in *Jefferson Community Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017); *see* Ans. Br. 24. The Members previously acknowledged a "conclusory paragraph" in that decision suggesting, "with no explanation or rationale," that the privilege might be qualified in some civil cases. Init. Br. 14 n.2 (citing *Jefferson Community Health Care Ctrs., Inc.*, 849 F.3d at 624). In any event, the Fifth Circuit recently clarified that the privilege is qualified only in the narrow sense that, "[w]hile 'important federal interests' may be at stake in criminal as well as 'extraordinary' civil cases, the qualifications do not subsume the rule." *La Union Del Pueblo Entero*, 68 F.4th at 237 (footnotes omitted) (citing *Jefferson Community Health Care Ctrs., Inc.*, 849 F.3d at 624, *and Gillock*, 445 U.S. at 373). With respect to Section 1983 cases, the court made clear that "a state legislator's common-law absolute immunity from civil actions precludes the compelled discovery of documents pertaining to the state legislative process." *Id.* at 239–40. Far from merely "recogniz[ing] that the

15

testimonial privilege for legislators is not absolute," as Plaintiffs suggest, Ans. Br. 18, the court fully endorsed the Members' view here—that the privilege might yield to a different statute, but in Section 1983 cases, "[t]he Supreme Court [has] held that 'a state legislator's common-law absolute immunity from civil suit survived the passage of the Civil Rights Act of 1871.'" *La Union Del Pueblo Entero*, 68 F.4th at 239 (quoting *Gillock*, 445 U.S. at 372).

The Eighth Circuit, too, recently held that the legislative privilege enjoyed by state lawmakers is an "'absolute bar to interference'" that "extends beyond immunity from liability to the compelled discovery of documents or testimony." *In re N. Dakota Legis. Assembly*, 2023 WL 3831550, at *2 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)). As the court explained, "[i]n civil litigation, there is no reason to conclude that state legislators and their aides are 'entitled to lesser protection than their peers in Washington.'" *Id.* at *1 (quoting *Reeder v. Madigan*, 780 F.3d 799, 805 (7th Cir. 2015)). Accordingly, they "'should be protected not only from the consequences of litigation's results but also from the burden of defending themselves.'" *Id.* at *2 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam)).

**4.** In all, four federal appellate courts—the Fourth, Fifth, Eighth, and D.C. Circuits—have held that the privilege is an absolute bar to compelled participation in discovery in cases like this one, and everything this Court and the Supreme Court have said about the issue suggests that they agree. No federal appellate court has held otherwise, and the lack of persuasive support for Plaintiffs' position is only underscored

by their heavy reliance on a "litany" of district court decisions that were incorrect for the same reasons as the decision below. *See* Ans. Br. 22–23.

Plaintiffs are wrong in their suggestion that "the First and Ninth Circuits have implied" that the privilege may yield in some subset of Section 1983 cases. Ans. Br. 24. Like this Court, the First and Ninth Circuits have reserved the question. In *American Trucking Associations*, the First Circuit said only that "there *might* be a private civil case in which state legislative immunity must be set to one side because the case turns so heavily on subjective motive or purpose," but "*even assuming*" that is correct, "the need for the discovery requested here is simply too little to justify such a breach of comity." *Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 88, 90 (1st Cir. 2021) (emphases added). And in *Lee*, the Ninth Circuit likewise observed that "[a]lthough the Supreme Court has not set forth the circumstances under which the privilege must yield to the need for a decision maker's testimony, it has repeatedly stressed that 'judicial inquiries into legislative . . . motivation represent a substantial intrusion' such that calling a decision maker as a witness 'is therefore usually to be avoided.'" *Lee v. City of L.A.*, 908 F.3d 1175, 1187 (9th Cir. 2018) (quoting *Arlington Heights*, 429 U.S. at 268 n.18); *see also* Init. Br. 8 n.2.

Plaintiffs also point to the Third Circuit's decision in *In re Grand Jury*, 821 F.2d 946 (3d Cir. 1987); *see* Ans. Br. 24. In that case, state legislators sought to quash federal grand jury subpoenas served on them, and the court followed *Gillock*'s civil-criminal distinction by rejecting even a "qualified speech or debate privilege" that would obstruct

access to evidence in a federal-criminal investigation, while recognizing the possibility

of "a more narrowly tailored privilege for confidential deliberative communications."

*In re Grand Jury*, 821 F.2d at 958. The decision therefore says nothing about civil cases

at all, let alone about Section 1983 cases specifically.

### B. Plaintiffs' Other Arguments for Qualifying the Privilege Are Unpersuasive.

Plaintiffs advance a mishmash of additional arguments that equally

misapprehend the nature of legislative privilege.

**1.** Plaintiffs first contend that state lawmakers' privilege against compulsory

evidentiary process must be qualified, not absolute, on the strength of the general rule

that *other* "privileges must be narrowly construed because they impede the search for

truth." Ans. Br. 1 (quoting *United States v. Singleton*, 260 F.3d 1295, 1300 (11th Cir. 2001)).

Be that as it may of the "marital communications privilege" and others like it, *Singleton*,

260 F.3d at 1297, the privilege at issue here is rooted in "the principles of our free

government" and thus requires "the most favorable allowance," *Coffin v. Coffin*, 4 Mass.

1, 7 (1808). As the Supreme Court has explained, "[t]he legislative immunity recognized

in *Tenney v. Brandhove*" was "a presupposition of our scheme of representative

government." *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985). The doctrine is "indispensably

necessary" in that it "support[s] the rights of the people, by enabling their

representatives to execute the functions of their office." *Tenney*, 341 U.S. at 373–74.

Thus, as the Supreme Court has explained, "state legislative immunity for purposes of

§ 1983 has been patterned after immunity under the Speech or Debate Clause," *Dennis*, 449 U.S. at 30 (citing *Sup. Ct. of Va.*, 446 U.S. at 732–34), which must be construed "broadly to effectuate its purposes," *Eastland*, 421 U.S. at 501.

Plaintiffs are incorrect in any event that "the search for truth" distinguishes the privilege at issue from the privilege of immunity from suit that everyone agrees is absolute. Ans. Br. 1. If anything, the privilege bars access to just one source of evidence, while the immunity bars some claims entirely. The plaintiff in *Tenney*, for example, sued members of the California Senate under Section 1983 alleging that certain committee meetings were "not held for a legislative purpose" but to "intimidate and silence" him in violation of the First Amendment and Equal Protection Clause. 341 U.S. at 369–71. The Supreme Court nonetheless held that absolute legislative immunity barred the suit. If the interest in representative democracy justified a categorical bar to the constitutional claims in *Tenney*, it follows with even greater force that the same interest justifies an absolute privilege shielding just one among many sources of evidence in cases like this one.

Plaintiffs fare no better in arguing that a qualified evidentiary privilege is necessary to bring state lawmakers in line with other officials. Ans. Br. 19. That argument, too, fails to account for the special status that legislative privilege occupies in the American legal tradition. There are indeed public officials who are entitled to absolute immunity from suit but only a qualified evidentiary privilege—judges among them, for example—but that is so by design. Legislative privilege is so "indispensably

necessary" in "support[ing] the rights of the people," *Tenney*, 341 U.S. at 373–74, that the Supreme Court has contrasted state legislators with judges in that the latter may be "required to testify about their judicial conduct in third–party litigation," while the former may not, because lawmakers enjoy a privilege that is "constitutionally based" in that it "has been patterned after immunity under the Speech or Debate Clause," *Dennis*, 449 U.S. at 30.

Plaintiffs complain that this conception of the privilege would put state lawmakers above "even the President." Ans. Br. 35–36. That is simply incorrect. Plaintiffs point to *Trump v. Vance* and *Clinton v. Jones*, but those cases were about whether a "sitting President" could be compelled to participate in litigation regarding his "private conduct," not his "official acts." *Trump v. Vance*, 140 S. Ct. 2412, 2426 (2020) (citing *Clinton v. Jones*, 520 U.S. 681, 694 n.19 (1997)). While the Supreme Court rejected an absolute privilege for "private conduct," it held that "a court should use its inherent authority to quash or modify the subpoena, if necessary to ensure that such 'interference with the President's duties would not occur.'" *Vance*, 140 S. Ct. at 2431 (quoting *Clinton*, 520 U.S. at 708). Legislative privilege, by contrast, extends only to actions "in the sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 376.

**2.** The Supreme Court explained in *Bogan* that the privilege is especially important at the state and local levels, "where the part-time citizen-legislator remains commonplace." 523 U.S. at 52. As discussed more fully in the Members' Initial Brief, that is certainly true of the Florida Legislature, which convenes for regular session just

60 days per year and is largely comprised of members with other full-time jobs and myriad other responsibilities. *See* Init.Br. 18–19.

Plaintiffs' response—that the Florida state courts recognize only a qualified legislative privilege—says nothing about federal law, let alone the burden posed by federal-court subpoenas for evidence in support of federal claims. *See* Ans. Br. 35 n.16 (citing *League of Women Voters v. Fla. House of Representatives*, 132 So. 3d 135, 143 (Fla. 2013)). "[T]he absolute immunity for state legislators recognized in *Tenney* reflected the Court's interpretation of federal law; the decision did not depend on the presence of a speech or debate clause in the constitution of any State, or on any particular set of state rules or procedures available to discipline erring legislators." *Lake Country Estates, Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 404 (1979); *see League of Women Voters*, 132 So. 3d at 143 ("[F]ederal courts have long recognized the existence of a federal legislative privilege based on the explicit text of the Speech or Debate Clause of the United States Constitution and through federal common law—neither of which applies to an action in state court based on a specific prohibition in the state constitution."). The Florida Constitution is relevant only because it provides for the kind of "part-time citizen-legislat[ure]" that the Supreme Court has deemed especially deserving of legislative privilege under federal law. *Bogan*, 523 U.S. at 52.

Plaintiffs also seem to suggest that Florida's public-records laws reflect less than zealous guardianship of the Members' legislative privilege because they allow the "inspection of legislative records." *See* Ans. Br. 35 n.16 (citing Fla. Stat. § 11.0431(1)).

To the contrary, the Florida Constitution provides that "each house of the legislature may adopt rules governing the enforcement of" the public records laws "in relation to records of the legislative branch." Fla. Const. art. I, § 24(c). Rule 14.1 of the Rules of the Florida House of Representatives, in turn, assigns the enforcement of Florida's legislative-records statutes to the Speaker of the House.[1] No provision of Florida law authorizes the courts to intervene in disputes concerning legislative records. If anything, the State has guarded the Members' legislative privilege as zealously as possible. The argument fails in any event because potential relief under state law has no bearing on the privilege in federal cases. *See Lake Country Estates, Inc.*, 440 U.S. at 405 ("Whatever potential damages liability regional legislators may face as a matter of state law" does not affect their privilege with respect to "federal claims.").

\*      \*      \*

In sum, precedent overwhelmingly supports the view that legislative privilege is an absolute bar to state lawmakers' compelled participation in discovery in Section 1983 cases, and none of Plaintiffs' arguments to the contrary are persuasive. Accordingly, the Members' privilege claims should have been upheld.

---

[1]  *See* Rule 14.1, Rules of the Fla. H. of Reps. (2022-2024), *available at https://www.myfloridahouse.gov/Sections/Documents/loaddoc.aspx?PublicationType=Reference&CommitteeId=&Session=2023&DocumentType=The+Rules+Of+The+House+of+Representatives&FileName=2022-2024+House+Rules+-+Edition+1.pdf* ("Any person who is denied access to a legislative record and who believes that he or she is wrongfully being denied such access may appeal to the Speaker the decision to deny access.").

## CONCLUSION

For the foregoing reasons and those discussed in the Members' Initial Brief, the Court should reverse and remand with instructions to quash the subpoenas in their entirety.

Respectfully submitted,

ASHLEY MOODY
  *Attorney General*

HENRY C. WHITAKER
  *Solicitor General*
*/s/ Daniel W. Bell*
DANIEL W. BELL
  *Chief Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF FLORIDA
PL-01 The Capitol
Tallahassee, FL 32399
(850) 414-3300
*daniel.bell@myfloridalegal.com*

DAVID AXELMAN
  *General Counsel*
THE FLORIDA HOUSE OF
REPRESENTATIVES
317 The Capitol
Tallahassee, FL 32399
(850) 717-5500
*david.axelman@myfloridahouse.gov*

June 26, 2023

23

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,814 words.

2.      This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Daniel W. Bell*
Daniel W. Bell

## CERTIFICATE OF SERVICE

I certify that on June 26, 2023, I electronically filed the foregoing brief with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all parties in the case who are registered through CM/ECF.

/s/ Daniel W. Bell
Daniel W. Bell