No. 23-10616

# United States Court of Appeals

## *for the*

# Eleventh Circuit

---

LEROY PERNELL, DANA THOMPSON DORSEY, SHARON WRIGHT
AUSTIN, SHELLEY PARK, JENNIFER SANDOVAL, et al.,

*Plaintiffs-Appellees,*

– v. –

FLORIDA BOARD OF GOVERNORS OF THE STATE UNIVERSITY, et al.,

*Defendants,*

ROBERT ALEXANDER ANDRADE, MELONY BELL, DAVID BORRERO,
JUAN FERNANDEZ-BARQUIN, RANDY FINE, et al.,

*Interested Parties-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA, IN NO. 4:22-CV-00304-MW-MAF
(HONORABLE MARK E. WALKER, CHIEF U.S. DISTRICT COURT JUDGE)

---

## BRIEF OF CIVIL RIGHTS ORGANIZATIONS AS *AMICI CURIAE* IN SUPPORT OF PETITIONERS-APPELLEES' PETITION FOR REHEARING EN BANC

L. NICOLE ALLAN
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, C.A. 94111
(415) 984-8700
nallan@omm.com

HANA STODDER
O'MELVENY & MYERS LLP
400 South Hope St., 18th Floor
Los Angeles, C.A. 90071
(213) 430-6000
hstodder@omm.com

MEAGHAN VERGOW
*Counsel of Record*
O'MELVENY & MYERS LLP
1625 Eye St., N.W.
Washington, D.C. 20006
(202) 383-5300
mvergow@omm.com

*Attorneys for Amici Curiae*

CP COUNSEL PRESS    (213) 680-2300

*Pernell v. Fla. Bd. of Governors of the State Univ.*, No. 23-10616

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Rules 26.1-1 through 26.1-3 and 28-1(b) of the Rules of the United States Court of Appeals for the Eleventh Circuit, undersigned counsel for *amici curiae* certifies that the Certificate of Interested Persons ("CIP") set forth in the Petition for Rehearing En Banc of Petitioners-Appellees LeRoy Pernell, et al. (Nov. 20, 2023) is correct and complete, subject to the amendments of any other *amici* who have filed CIPs since that time and subject to the following additions:

*Amici Curiae*:

1.      American Oversight

2.      Asian Americans Advancing Justice - AAJC

3.      Common Cause

4.      LatinoJustice PRLDEF

5.      League of Women Voters of the United States

Counsel for *Amici Curiae*:

1.      Allan, L. Nicole

2.      Stodder, Hana

3.      VerGow, Meaghan

Undersigned counsel for *amici curiae* further certifies that no *amici* nor counsel for *amici* has a parent corporation, and no company owns a 10 percent or greater ownership interest in *amici* nor counsel for *amici*.

*Pernell v. Fla. Bd. of Governors of the State Univ.*, No. 23-10616

Pursuant to Rule 26.1-1(b) of the Rules of the United States Court of Appeals for the Eleventh Circuit, the undersigned certifies that the above information will be entered into the web-based CIP, indicating that there is nothing to declare.

/s/ *Meaghan VerGow*
Meaghan VerGow

**TABLE OF CONTENTS**

**Page(s)**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................C-1

STATEMENT OF INTEREST ................................................................1

STATEMENT OF THE ISSUES...............................................................2

SUMMARY OF THE ARGUMENT .......................................................2

ARGUMENT .........................................................................................4

    I.    CONGRESS PASSED SECTION 1983 TO ENFORCE
        FEDERAL LAW AGAINST UNLAWFUL STATE ACTION,
        INCLUDING LEGISLATIVE ACTION...........................................4

    II.   THROUGHOUT ITS HISTORY, SECTION 1983 HAS BEEN
        A VITAL TOOL FOR ROOTING OUT INTENTIONAL
        RACIAL AND RELIGIOUS DISCRIMINATION,
        INCLUDING BY STATE LEGISLATIVE BODIES. .......................6

    III.  THE PANEL OPINION WOULD INHIBIT THESE
        CRITICAL USES OF SECTION 1983 BY BARRING
        PLAINTIFFS FROM OBTAINING CRUCIAL EVIDENCE
        OF INTENT. ..................................................................................9

CONCLUSION.....................................................................................11

CERTIFICATE OF COMPLIANCE......................................................13

CERTIFICATE OF SERVICE ..............................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Burton v. City of Belle Glade,*
  178 F.3d 1175 (11th Cir. 1999) .............................................................8

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993).................................................................... 8, 11

*Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,*
  2 F.3d 1514 (11th Cir. 1993) ................................................................9

*City of Carrollton Branch of the NAACP v. Stallings,*
  829 F.2d 1547 (11th Cir. 1987) ..........................................................10

*City of S. Miami v. DeSantis,*
  561 F. Supp. 3d 1211 (S.D. Fla. 2021) ...............................................10

*Dennis v. Higgins,*
  498 U.S. 439 (1991).............................................................................7

*Emp. Div. v. Smith,*
  494 U.S. 872 (1990)...........................................................................10

*Greater Birmingham Ministries v. Sec'y of State for State of Ala.,*
  992 F.3d 1299 (11th Cir. 2021) ..................................................... 8, 10

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
  599 U.S. 166 (2023)........................................................................3, 6

*Hunter v. Underwood,*
  471 U.S. 222 (1985)...........................................................................10

*In re Hubbard,*
  803 F.3d 1298 (11th Cir. 2015) ..........................................................11

*Kennedy v. Bremerton Sch. Dist.,*
  142 S. Ct. 2407 (2022)............................................................... 4, 9, 10

*League of Women Voters of Fla. Inc. v. Fla. Sec'y of State,*
  66 F.4th 905 (11th Cir. 2023) ..........................................................4, 7

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
  138 S. Ct. 1719 (2018)......................................................................8, 9

*McLaughlin v. Florida,*
  379 U.S. 184 (1964)..............................................................................4

# TABLE OF AUTHORITIES

**Page(s)**

*Mitchum v. Foster*,
   407 U.S. 225 (1972).................................................................. 5, 6, 11

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978).......................................................................5, 7

*Monroe v. Pape*,
   365 U.S. 167 (1961).......................................................................5, 6

*Pernell v. Fla. Bd. of Governors of State Univ.*,
   84 F.4th 1339 (11th Cir. 2023) ........................................ 2, 7, 10, 11

*Rogers v. Lodge*,
   458 U.S. 613 (1982)...........................................................................7

*Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*,
   727 F.3d 1349 (11th Cir. 2013) .........................................................9

*Timbs v. Indiana*,
   139 S. Ct. 682 (2019)........................................................................5

*Town of Newton v. Rumery*,
   480 U.S. 386 (1987)...........................................................................6

*United States v. Gillock*,
   445 U.S. 360 (1980)........................................................................2, 3

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977).........................................................................11

**Statutes**

42 U.S.C. § 1983 ................................................................... 1, 2, 6

**Other Authorities**

Cong. Globe, 39th Cong., 1st Sess. (1866)....................................4

Cong. Globe, 42d Cong., 1st Sess. (1871)....................................3, 5

Pamela S. Karlan, *The Paradoxical Structure of Constitutional
   Litigation*, 75 Fordham L. Rev. 1913 (2007) ............................7

Paul Finkelman, *John Bingham and the Background to the Fourteenth
   Amendment*, 36 Akron L. Rev. 671 (2003)..............................5

## STATEMENT OF INTEREST[1]

*Amici curiae* civil rights organizations respectfully submit this brief in support of Petitioners-Appellees LeRoy Pernell, et al. *Amici* American Oversight, Asian Americans Advancing Justice - AAJC, Common Cause, LatinoJustice PRLDEF, and League of Women Voters of the United States advocate for various civil rights causes, including racial equity, educational opportunity, academic freedom in higher education, government transparency, and voting rights. The form of their advocacy varies, but their purpose is uniform: to promote and protect equity, equality, and opportunity under law by holding accountable those who infringe fundamental rights.

As organizations that regularly litigate civil rights claims under 42 U.S.C. § 1983 and use public records to promote transparency and accountability for government actors, including legislators, *amici* share a concern that the panel opinion will likely hinder their ability to redress intentional discrimination by legislative bodies, contrary to the goals and history of Section 1983. *Amici* urge the full Court to grant rehearing to decide whether the panel's unprecedented categorical rule can be squared with federal law.

---

[1] No party's counsel authored any part of this brief, nor did any party's counsel or any other person contribute any money intended to fund this brief.

## STATEMENT OF THE ISSUES

Whether the panel majority contravened Supreme Court precedent by holding that the qualified state legislative privilege is absolute in 42 U.S.C. § 1983 cases.

## SUMMARY OF THE ARGUMENT

Petitioners—professors and a student at public universities in Florida—allege that racial animus drove the enactment of a state law restricting discussions of race in Florida schools. Proof of such a claim sometimes lies in the possession of the law's legislative sponsors, but a divided panel of this Court found that the legislative privilege is "insurmountable in private civil actions under section 1983" and precluded that type of third-party discovery. *Pernell v. Fla. Bd. of Governors of State Univ.*, 84 F.4th 1339, 1344 (11th Cir. 2023). The Supreme Court has held that the legislative privilege does not apply "where important federal interests are at stake." *United States v. Gillock*, 445 U.S. 360, 373 (1980). The panel's unprecedented stance that discovery of legislators is *never* appropriate in Section 1983 actions is at odds with the Supreme Court's guidance and with the origins of this landmark civil rights statute.

Section 1983 grants a private right of action against "[e]very person" who, under color of state law, deprives a citizen "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In the 153 years since

its passage, the statute has served as a vital tool in vindicating individual liberties, including freedom from racial and religious discrimination as guaranteed by the First, Fourteenth, and Fifteenth Amendments, and including when such discrimination is effected through state legislative action.  In ruling that the legislative privilege forecloses discovery of legislative motive, the panel majority's opinion hinders the very enforcement actions with "important federal interests . . . at stake" that *Gillock* sought to protect.  445 U.S. at 373.

Congress enacted Section 1983 during the Reconstruction Era in response to egregious violations of individual rights by state actors, including legislators.  In the year the statute was passed, a multi-hundred-page Senate Committee report "recounted pervasive state-sanctioned lawlessness and violence against the freedman and their White Republican allies."  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 176 (2023).  Debates on Section 1983 noted that "[a]ffirmative action or legislation" by states depriving individuals of civil rights, as well as failure to enforce those rights, were important motivations for the statute.  Cong. Globe, 42d Cong., 1st Sess. 459 (1871).

Plaintiffs have employed Section 1983 ever since to safeguard important constitutional rights, including by challenging discriminatory legislation.  These challenges frequently require proof of "discriminatory intent," requiring evidence that the legislature, in passing a given statute, did so with a discriminatory purpose.

3

*See, e.g.*, *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 918 (11th Cir. 2023); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022).  By making an entire category of evidence of intent functionally unavailable, the panel has effectively sanctioned discrimination in cases where plaintiffs need this evidence to prevail, contrary to the goals of Section 1983 and the principles underlying *Gillock*.  This Court should grant the petition to rehear this case en banc and reject the panel's categorical rule.

## ARGUMENT

### I.    CONGRESS PASSED SECTION 1983 TO ENFORCE FEDERAL LAW AGAINST UNLAWFUL STATE ACTION, INCLUDING LEGISLATIVE ACTION.

From its inception, Section 1983 was designed to protect important federal interests from illicit state action.  In the wake of the Civil War, Congress sought to create federal protections against the evils of slavery, most famously through the Reconstruction Amendments.  *See McLaughlin v. Florida*, 379 U.S. 184, 192 (1964) ("[T]he central purpose of the Fourteenth Amendment was to eliminate racial discrimination emanating from official sources in the States.").  The framers of the Fourteenth Amendment left no doubt that "there are some inherent and inalienable rights, pertaining to every citizen, which cannot be abolished or abridged by State constitutions or laws," including "the right to personal security, personal liberty, and the right to acquire and join property."  Cong. Globe, 39th

Cong., 1st Sess. 1832-33 (1866); *see also id.* at 2766 (explaining that Fourteenth Amendment was designed to "restrain the power of the States and compel them at all times to respect these fundamental guarantees").

While noble in theory, the Reconstruction Amendments provided little protection in practice.  State legislatures continued to enact Black Codes that perpetuated the racial hierarchy, preventing Black people from "owning land, moving to towns, voting, testifying in all court cases, or in any other way asserting and protecting their rights as free people."  Paul Finkelman, *John Bingham and the Background to the Fourteenth Amendment*, 36 Akron L. Rev. 671, 690 (2003); *see also Timbs v. Indiana*, 139 S. Ct. 682, 688 (2019).  In many states, law enforcement actively undermined the Amendments by brutally killing, whipping, beating, and torturing Black citizens.  Finkelman, *supra*, at 688-90; *see also Monroe v. Pape*, 365 U.S. 167, 176-78 (1961), *overruled in part on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 (1978).  Individuals could not seek recourse in state courts, which were themselves "being used to harass and injure individuals."  *Mitchum v. Foster*, 407 U.S. 225, 240 (1972).  "Among the most dangerous things an injured party [could] do [was] to appeal to justice."  *Id.* at 241 (quoting Cong. Globe, 42d Cong., 1st Sess. App. 78).

By 1871, it was clear that neither "[the] Civil War Amendments nor the landmark Civil Rights Act of 1866 successfully prevented postbellum state actors

from continuing to deprive American citizens of federally protected rights."
*Talevski*, 599 U.S. at 176.  Against this backdrop, Congress enacted Section 1 of
the Civil Rights Act of 1871, which is now codified as 42 U.S.C. § 1983.  *Id.*
Section 1983 was specifically conceived to address the malfeasance of these state
actors at all levels—"executive, legislative, or judicial."  *Mitchum*, 407 U.S. at 240
(citation omitted).  Indeed, one of the "three main aims" of the Act was to
"override certain kinds of state laws" that infringed on individuals' constitutional
rights.  *Monroe*, 365 U.S. at 173.  Recognizing "that state officers might, in fact, be
antipathetic to the vindication of [federal] rights," Congress "interpose[d] the
federal courts between the States and the people, as guardians of the people's
federal rights."  *Mitchum*, 407 U.S. at 242.

      This history makes clear that Congress's chief concern in passing Section
1983 was to shield important personal liberties from invidious state action,
including by state legislatures.  In an era where state law was weaponized against
the country's own citizens, Section 1983 "identifie[d ] important federal interests
in providing a remedy for the violation of constitutional rights."  *Town of Newton
v. Rumery*, 480 U.S. 386, 418 (1987) (Stevens, J., dissenting).

## II.  THROUGHOUT ITS HISTORY, SECTION 1983 HAS BEEN A VITAL TOOL FOR ROOTING OUT INTENTIONAL RACIAL AND RELIGIOUS DISCRIMINATION, INCLUDING BY STATE LEGISLATIVE BODIES.

      Since its passage, Section 1983 has been extraordinarily effective at

protecting a host of federal rights. *Dennis v. Higgins*, 498 U.S. 439, 445 (1991) (noting that the Supreme Court has "given full effect to [Section 1983's] broad language, recognizing that [Section] 1983 'provide[s] a remedy, to be broadly construed, against all forms of official violation of federally protected rights.'" (quoting *Monell*, 436 U.S. at 700-01)); *see also Pernell*, 84 F.4th at 1352 (Pryor, J., dissenting) ("Section 1983 has provided the cause of action in major cases addressing" rights under the First, Second, Eighth, and Fourteenth Amendments.). In addition to compensating plaintiffs for their constitutional harms, lawsuits brought pursuant to Section 1983 help spur the development of constitutional law. *See* Pamela S. Karlan, *The Paradoxical Structure of Constitutional Litigation*, 75 Fordham L. Rev. 1913, 1918 (2007). These suits both "provid[e] future guidance to governmental entities regarding the scope of constitutional constraints" and "induce the government to change its policies to avoid further liability." *Id.*

Consistent with its origins, Section 1983 has been especially effective in targeting racially discriminatory laws and policies. For instance, Section 1983 has frequently served as the vehicle for challenging voting laws that discriminate against Black citizens in violation of the Fourteenth and Fifteenth Amendments. *See, e.g.*, *Rogers v. Lodge*, 458 U.S. 613, 615, 629 (1982) (arguing that the voting policies at issue were "maintained for the invidious purpose of diluting the voting strength of the [B]lack population"); *League of Women Voters*, 66 F.4th at 918

(challenging voting drop-box, solicitation, and registration policies as "adopted

with the intent to discriminate against [B]lack voters"); *Greater Birmingham*

*Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1318 (11th Cir. 2021)

(arguing that Alabama voter-identification law was "purposefully enacted" to deny

individuals right to vote "on account of race or color"); *Burton v. City of Belle*

*Glade*, 178 F.3d 1175, 1186 (11th Cir. 1999) (contending that city's property-

annexing practices related to housing development largely occupied by Black

residents were intentionally designed to dilute residents' voting power). These

cases demonstrate the centrality of the intent inquiry in cases, like this one, that

assert intentional discrimination on the basis of race.

Intent is also key to Section 1983 cases challenging intentional religious

discrimination by legislative bodies. In the seminal free exercise case of *Church of*

*Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993), the Supreme

Court evaluated local ordinances prohibiting animal sacrifice. In concluding "that

suppression of the central element of the Santeria worship service was the object of

the ordinances," *id.* at 534, Justices Kennedy and Stevens looked to "direct and

circumstantial evidence" of "the city council's object," including "legislative or

administrative history" such as "contemporaneous statements made by members of

the decisionmaking body," *id.* at 540 (opinion of Kennedy, J.); *see also*

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1731

(2018) (endorsing *Lukumi* as relevant to "assessment of governmental neutrality" toward religion). This Court has recognized the relevance of similar evidence of intent in analyzing whether local ordinances violate the free exercise and establishment clauses. *See, e.g.*, *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1531, 1551 (11th Cir. 1993) (referencing "official legislative record" as well as "documents concerning unrelated government activity" and "extemporaneous remarks" by legislators in finding factual dispute over whether anti-solicitation ordinance was passed with "impermissible sectarian motives")[2]; *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*, 727 F.3d 1349, 1352 & n.1, 1358 (11th Cir. 2013) (finding record on free exercise claim "sufficiently developed so as to render that issue fit for judicial resolution" where synagogue alleged that city designated it a historic site "for discriminatory reasons" due to mayor's "personal vendetta"). These intentional-discrimination challenges are core to the historic and continuing legacy of Section 1983.

## III. THE PANEL OPINION WOULD INHIBIT THESE CRITICAL USES OF SECTION 1983 BY BARRING PLAINTIFFS FROM OBTAINING CRUCIAL EVIDENCE OF INTENT.

Legislative intent is relevant only to Section 1983 cases involving

---

[2] While the establishment clause test followed in *Church of Scientology* has since been abrogated, *see Kennedy*, 142 S. Ct. at 2427-28, it was not because legislative motives are insulated from scrutiny, *see id.* at 2422; *Masterpiece Cakeshop*, 138 S. Ct. at 1731.

discriminatory legislative action. But for that subset of cases, legislative intent is a linchpin. *See Pernell*, 84 F.4th at 1353 (Pryor, J., dissenting). This is true for equal protection claims under the Fourteenth Amendment and vote denial or abridgment claims under the Fifteenth Amendment, both of which require showings of "discriminatory purpose." *Greater Birmingham*, 992 F.3d at 1321; *see also Hunter v. Underwood*, 471 U.S. 222, 224, 229 (1985) (relying on contemporaneous evidence from Alabama's constitutional convention to conclude that constitutional provision was enacted with racial animus); *City of Carrollton Branch of the NAACP v. Stallings*, 829 F.2d 1547, 1551-53 (11th Cir. 1987) (considering speech made by bill's sponsor as "evidence of an intent to discriminate against [B]lack voters in any voting legislation before the General Assembly during [the] session"); *City of S. Miami v. DeSantis*, 561 F. Supp. 3d 1211, 1271-80 (S.D. Fla. 2021), *vacated on jurisdictional grounds*, 65 F.4th 631 (11th Cir. 2023) (determining that communications between legislators "strongly suggest[ed]" that Florida's sanctuary-city law "ratified the racially discriminatory views" of those legislators). It can also be true for free exercise claims under the First Amendment. *See Kennedy*, 142 S. Ct. at 2421-22 (free exercise violation may occur where government policy "is not 'neutral,'" which may be the case "if it is 'specifically directed at . . . religious practice'" or if "a religious exercise is otherwise its 'object'" (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 878-79 (1990),

and *Lukumi*, 508 U.S. at 533)).

Where these claims involve discriminatory action by a legislative body, intent necessarily requires an inquiry into "the subjective motivations of those acting in a legislative capacity." *In re Hubbard*, 803 F.3d 1298, 1311 (11th Cir. 2015); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) (legislative history is "highly relevant" evidence of intent, "especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports").  Since any materials "go[ing] to legislative motive" are covered by the legislative privilege, *Hubbard*, 803 F.3d at 1311, the panel's categorical rule that this privilege can *never* yield to federal interests in Section 1983 cases will limit Section 1983 plaintiffs' ability to obtain important proof for an essential element of their claims.[3]  This outcome cannot be squared with Section 1983's "very purpose" to "protect the people from unconstitutional action under color of state law, 'whether that action be executive, *legislative*, or judicial.'"  *Mitchum*, 407 U.S. at 242 (citation omitted) (emphasis added).

## CONCLUSION

For these reasons, *amici* respectfully request that the Court grant the petition

---

[3] Many plaintiffs may be able to obtain proof of legislative intent from non-privileged sources. *See Pernell*, 84 F.4th at 1354 n.12 (Pryor, J., dissenting).  But others may need to seek it through third-party subpoenas like the one in this case.  For these plaintiffs, the panel's categorical rule could function as an automatic dismissal of their claims.

for rehearing en banc.

Respectfully submitted,


/s/ *Meaghan VerGow*

MEAGHAN VERGOW
*Counsel of Record*
O'MELVENY & MYERS LLP
1625 Eye St. N.W.
Washington, D.C. 20006
(202) 383-5300
mvergow@omm.com

L. NICOLE ALLAN
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, C.A. 94111
(415) 984-8700
nallan@omm.com

HANA STODDER
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, C.A. 90071
(213) 430-6000
hstodder@omm.com

*Attorneys for Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

Under Federal Rule of Appellate Procedure 32(g), I hereby certify that the

foregoing brief of Civil Rights Organizations as *Amici Curiae* in Support of

Petitioners-Appellees complies with (1) the typeface requirements of Federal Rule

of Appellate Procedure 32(a)(5) because it was written in Times New Roman, 14-

point font and (2) the type-volume limitations contained in Federal Rules of

Appellate Procedure 29(b)(4), because it contains 2,527 words, excluding those

parts of the brief excluded from the word count under Federal Rule of Appellate

Procedure 32(f).

*/s/ Meaghan VerGow*
Meaghan VerGow

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief of Civil Rights Organizations as *Amici Curiae* in Support of Petitioners-Appellees was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit on November 27, 2023 using this Court's ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that four paper copies of the brief with green covers and backing will be dispatched for delivery via Federal Express to:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, G.A. 30303

/s/ *Meaghan VerGow*
Meaghan VerGow

14